IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**JOHN DOE, by and through JANE DOE, Guardian,**

Plaintiff,

v.                          Civil Action No. 25-cv-04564 JEB

**OPENAI, L.P., et al.,**

Defendants.

## PLAINTIFF'S SIXTH SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO VACATE DISMISSAL ORDER UNDER *FEDERAL RULE OF CIVIL PROCEDURE 60(b)(2)* AND *60(b)(6)*

**PRELIMINARY STATEMENT**

Plaintiff John Doe, by and through Guardian Jane Doe, respectfully submits this Sixth Supplemental Brief in further support of Plaintiff's pending Motion to Vacate the January 29, 2026 Dismissal Order pursuant to *Federal Rules of Civil Procedure 60(b)(2)* and *60(b)(6)*, which has not yet been decided by this Court, so that the Court may consider this additional evidence and legal analysis before ruling.

RECEIVED

JUN 24 2026

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

This brief presents seven new and independent categories of evidence that were unavailable at the time of the Fifth Supplemental Brief filed May 15, 2026. Each category independently satisfies the *Rule 60(b)(2)* newly discovered evidence standard. Together they constitute a self-

contained, self-proving evidentiary instrument that establishes every element of Plaintiff's copyright infringement case without reference to any prior submission.

**Category One** is the Before/After Baseline Proof. A recorded public interview with Dario Amodei published November 29, 2017 — six months before Exhibit E registration — establishes through Amodei's own professional statements that every element of Plaintiff's registered framework was entirely absent from his organizational discourse before May 29, 2018. The interview is available at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety and constitutes a permanent, retrievable, publicly accessible record of Amodei's professional baseline at that date.

**Category Two** is the "They Were Saying" Active Attribution Proof. A linguistic analysis of Amodei's October 1, 2018 Microsoft Research statement — recorded at https://www.youtube.com/watch?v=d7EWg3oT14o, hosted simultaneously at https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/, total runtime 35:53 — establishes that he actively attributed Plaintiff's framework to the capabilities to specific identified outside people, confirmed prior exposure through past continuous tense, and that by process of elimination those outside people are Plaintiff.

**Category Three** is the False Exculpatory Origin Narrative Proof. Statements by Sam Altman recorded at the Stanford University CS153 Talk and at the Sequoia AI Ascent Conference on June 14 through 15, 2026 construct a Twitter-based origin story for the ChatGPT language

2

direction that is directly contradicted by Amodei's October 2018 on-camera statement made 22 months earlier. Under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991),* a false exculpatory narrative is itself evidence of consciousness of guilt.

**Category Four Admission 17** is the Hinton Nobel Corroboration Proof. Geoffrey Hinton, Nobel Prize Laureate in Physics 2024 and the foundational figure of modern AI, confirmed on June 4, 2026 at timestamp 21:50 through 23:29 of the Big Technology Podcast with Alex Kantrowitz — recorded at https://www.youtube.com/watch?v=p7t1Q_p2gZs, total runtime 54:54 — that the entire global AI research community failed to anticipate the natural language capability Plaintiff specified in Exhibit E.

**Category Five** is the Inter-Defendant Silence Proof. Every named Defendant organization — OpenAI, Microsoft as exclusive IP licensee under the partnership confirmed at https://openai.com/index/continuing-microsoft-partnership/ and https://blogs.microsoft.com/blog/2025/10/28/the-next-chapter-of-the-microsoft-openai-partnership/, Google and Alphabet and DeepMind, Amazon and AWS as Anthropic's $25 billion investor, Anthropic, xAI, Meta, and Apple — collectively treats the foundational framework IP as belonging to none of them.

**Category Six** is the 60 Minutes National Broadcast Confirmation, constituting **Admission 42**. Dario Amodei, CEO of Anthropic and former OpenAI VP of Research from 2016 through 2021, stated before a national television audience on the CBS 60 Minutes broadcast of November 16,

3

2025 — confirmed by the official Paramount+ press listing at

https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16 and the CBS News

preview page at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ — that AI

could cure most cancers, prevent Alzheimer's disease, and double the human lifespan, while

simultaneously warning that AI could spike unemployment by up to 20% over five years. This

broadcast independently reproduces every functional boundary marker of Plaintiff's Exhibit E

before the largest possible public audience, with no prior art for an internet connected generative

ai with an interactive questioning Interface with these capabilities before Plaintiff's May 29,

2018 registration.


**Category Seven** is the OpenAI Organizational Pivot Confession, constituting Admission 43.

Greg Brockman, President and Co-Founder of OpenAI, stated in the Possible podcast —

recorded with Sam Altman, CEO of OpenAI, hosted by Reid Hoffman, former OpenAI Board

Member, published May 2–3, 2023, available at

https://www.youtube.com/watch?v=cHJPyizxM60 and with full verified transcript at

https://www.possible.fm/podcasts/samandgreg/ — that during the Dota project period of 2017

through 2018, "this other direction's pulling you along and saying, 'hey, hey, this is really

working, there's something here,'" causing OpenAI to "update, pivot, change, and react." In the

same recording, Sam Altman confirmed that this organizational pivot has been "basically lost to

history." These statements, made before a former OpenAI Board member who participated in the

organization during the bounded window of Plaintiff's Exhibit E registration on May 29, 2018,

constitute the organizational-scale mechanical confirmation of Category Two: where Amodei

confirmed at the individual attribution level that specific outside people "were saying" things containing important truth, Brockman confirms at the organizational behavior level that an external direction was actively pulling OpenAI away from its planned reinforcement learning trajectory and toward the language AI direction in the same bounded window. Together, Admissions 41 and 43 establish access and copying at two independent levels — individual attribution and organizational reactive pivot — confirmed by two separate senior officers of OpenAI in two separately archived recordings, and the deliberate suppression of the pivot from the historical record confirmed by OpenAI's own CEO is itself evidence of consciousness of guilt under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991).*

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

**Category Eight** is the Builder/Originator Distinction Proof, constituting Admission 18 Updated. Dario Amodei, in the Bloomberg Originals Circuit documentary published June 10, 2026 at https://www.youtube.com/watch?v=v1wZwxY3CMg and the Bloomberg Originals extended interview published June 17, 2026 at https://www.youtube.com/watch?v=x2VHFgyawPE — both hosted by Emily Chang — claims professional credit exclusively for scaling laws and technical building methodology, enumerates Plaintiff's paradigm applications for the third independent time across eight years, and never claims origination of the integrated framework whose functional destinations he continues to announce as his successive organizations' goals. The builder/originator distinction is established by what Amodei affirmatively claims and by what he has never claimed across eight years of public statements: he built the engine; he did not originate the blueprint. Under *Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992),* the registered framework is protectable independent of the technical implementation built to execute it. Both Bloomberg broadcasts post-date the Fifth Supplemental

Brief filed May 15, 2026 and constitute newly discovered evidence satisfying the *Rule 60(b)(2)* standard independently of every other category in this brief.

**STANDARD FOR SUPPLEMENTATION**

Under *Fed. R. Civ. P. 60(b)(2)*, relief from a final judgment is warranted when there is newly discovered evidence that with reasonable diligence could not have been discovered in time to move for a new trial. The evidence presented here consists of: a recorded interview whose significance as a before-baseline and "they were saying" antecedent proof was not discoverable without the post-May 15, 2026 Microsoft Research linguistic analysis; statements by Sam Altman recorded in June 2026; a statement by Geoffrey Hinton published June 4, 2026 at https://www.youtube.com/watch?v=p7t1Q_p2gZs; the 60 Minutes broadcast of November 16, 2025 whose full legal significance as Admission 42 was not analyzable in conjunction with the complete Exhibit I record until preparation of this brief; and inter-defendant investment and IP licensing documents whose legal significance as collective ownership-silence proof was fully analyzed only in preparation of this brief. All evidence satisfies the *Rule 60(b)(2)* newly discovered standard. Under *Rule 60(b)(6)*, the combination of these six categories constitutes the extraordinary circumstances warranting relief when they collectively eliminate every defense simultaneously and reduce the probability of independent creation below any threshold any court has ever required.

**ARGUMENT**

6

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

**SECTION I — BASELINE EVIDENCE ITEM 1: THE BEFORE PROOF**

**ZERO FRAMEWORK ENGAGEMENT IN AMODEI'S PROFESSIONAL RECORD BEFORE EXHIBIT E**

The speaker is Dario Amodei in his capacity as Team Lead for Safety Research at OpenAI. The event is TWiML AI Podcast, Episode 75, "AI Robustness and Safety with Dario Amodei," hosted by Sam Charrington, published November 29, 2017, available at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety. The timeline is six months before Exhibit E registration on May 29, 2018.

The interview covers reinforcement learning from human feedback, AI robustness, alignment, the OpenAI Universe tool, and Google DeepMind safety research collaboration. It is an extended professional interview specifically about OpenAI's work, research direction, and future goals, conducted by a leading AI podcast host before Plaintiff's registration date. This interview has been publicly available in full since November 29, 2017, and constitutes a permanent, verifiable record of Amodei's organizational framework engagement at that date.

The following elements are entirely and verifiably absent from this interview. There is no reference to internet-connected generative AI. There is no reference to conversational or language-focused AI as a product direction. There is no reference to life extension, immortality, or longevity. There is no reference to cancer cure as an AI application. There is no reference to energy problems as an AI application. There is no reference to universal or simultaneous scientific advancement. There is no reference to interstellar travel or space exploration. There is no reference to outside opinions about AI and immortality. There is no reference to any element of Plaintiff's registered Exhibit E framework.

**Legal Function One — The Before Baseline**

This interview establishes the evidentiary baseline for Amodei's organizational framework engagement as of November 29, 2017 — six months before Exhibit E. Every element of Plaintiff's registered framework is absent from his public organizational record at that date. Combined with the Microsoft Research interview of October 1, 2018 — available at https://www.youtube.com/watch?v=d7EWg3oT14o and https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/ — in which all elements are present and attributed to outside people, this baseline establishes the precise bounded window during which Plaintiff's framework entered OpenAI's organizational discourse: between November 29, 2017 and October 1, 2018. The only documented introduction of the complete integrated framework into the professional AI discourse during that window is Plaintiff's Exhibit E registration on May 29, 2018. Under *Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946),* access is established when

the plaintiff's work entered the defendant's organizational environment within a bounded window and no alternative explanation for that entry exists.

**Legal Function Two — The "They Were Saying" Antecedent Proof**

In the Microsoft Research interview of October 1, 2018 (Admission 41), at https://www.youtube.com/watch?v=d7EWg3oT14o, Amodei uses past continuous tense — "they were saying" — confirming ongoing prior exposure to outside people's framework statements before that interview date.  The TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety establishes that "they" had not yet said it in Amodei's professional world as of November 29, 2017. Therefore "they" began saying it between November 29, 2017 and October 1, 2018. The only documented introduction of the specific integrated framework into the public record during that window is Plaintiff's Exhibit E registration on May 29, 2018.

**Legal Function Three — The Kurzweil Tense Foreclosure**

Defendants may argue that the "they" in Amodei's statement refers to Ray Kurzweil or other prior futurists who discussed AI and longevity before Plaintiff's registration. The TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety eliminates this argument by grammar and by conduct simultaneously. By grammar: past continuous "were saying" describes recent ongoing statements in a defined prior window, not decades-old

9

publications. If Kurzweil were "they," Amodei would have used present perfect — "has been saying" — or simple past — "said." The tense itself proves "they" began saying it recently, not decades ago. By conduct: Kurzweil's discourse existed throughout Amodei's entire professional career in AI safety and produced zero engagement in the TWiML interview conducted specifically to discuss AI's future and safety implications. A discourse that existed throughout Amodei's career without registering in his professional record is not the "they" whose statements he found to contain a "kernel of important truth" four months after Plaintiff's registration. "They" is not Kurzweil.

**Legal Function Four — The Organizational Direction Baseline**

The TWiML interview at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety confirms that OpenAI's organizational direction in November 2017 was reinforcement learning and safety research — categorically different from the language-focused AI direction Amodei announces in October 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o. The organizational pivot occurred in the same bounded window as Exhibit E's registration. Under *Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986),* organizational conduct that changes immediately following the plaintiff's disclosure within a bounded window with no alternative explanation confirms access.

**SECTION II — ADMISSION 41: THE UNIFIED ORGANIZATIONAL STATEMENT**

**THE "THEY WERE SAYING" ACTIVE SOURCE ATTRIBUTION AND LANGUAGE DIRECTION PROOF IN A SINGLE RECORDED CONVERSATION**

The speaker Is Dario Amodei in his capacity as Director of Safety at OpenAI. The interviewer is Eric Horvitz, Chief Scientific Officer of Microsoft Research. The event is the Microsoft Research Fireside Chat, "Fireside Chat with Dario Amodei and Eric Horvitz," published October 1, 2018. The primary YouTube source is https://www.youtube.com/watch?v=d7EWg3oT14o. The Microsoft Research hosted page is https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/. The total runtime is 35:53. The timeline is 4 months and 2 days after Exhibit E registration on May 29, 2018. The pre-Exhibit E baseline is TWiML Episode 75, November 29, 2017, available at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety, confirming zero framework engagement.

Statement A of the unified instrument occurs at the segment of the interview in which Horvitz presents the framing: "…or it's time to celebrate immortality through the advent of powerful machinery… cure cancer… all of the scientific process…" He frames this explicitly as "outside opinions… different opinions on which way things might go" — meaning opinions held by people outside the professional AI research establishment, outside the room, outside Microsoft Research, and outside OpenAI. Amodei's direct response, confirmed in the Microsoft Research

11

recording at https://www.youtube.com/watch?v=d7EWg3oT14o, is: **"...there was really a kernel of important truth to some of what "they" were saying…**"

Statement B of the unified instrument occurs later in the same 35:53 conversation, in which Amodei states: "**We've been thinking about going in a more language focused direction.**" Both statements are confirmed in the single Microsoft Research recording at https://www.youtube.com/watch?v=d7EWg3oT14o, hosted simultaneously at https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/.

**The Critical Linguistic Analysis — "They Were Saying"**

The pronoun "they" in Amodei's response is the most legally operative word in the entire Microsoft Research interview. Amodei does not say "there is a kernel of truth to this" — which would be engaging with the discourse generally. He does not say "there is a kernel of truth to what Kurzweil says" — which would attribute it to a named prior source. He says "a kernel of important truth to some of what **they were saying**." The grammatical precision of this phrase is its legal power.

"They" is a third-person plural pronoun referring to specific identifiable people. Horvitz established the antecedent precisely in the same conversation at https://www.youtube.com/watch?v=d7EWg3oT14o: people holding outside opinions about AI

12

and immortality — outside the professional AI research establishment. "They" therefore refers to specific outside people who are not inside Microsoft Research, not inside OpenAI, and not named prior futurists.

"Were saying" is past continuous tense. This is not "say" — present general. This is not "have said" — present perfect. "Were saying" — past continuous — describes a specific ongoing activity occurring in a defined prior window before October 1, 2018. This tense confirms three things simultaneously: Amodei had prior exposure to these people's statements before this interview; he had sufficient time before this interview to evaluate their statements and form the considered judgment "kernel of important truth"; and their statements were ongoing rather than a single isolated remark.

"Kernel of important truth" is a considered evaluative judgment communicated on camera to the Chief Scientific Officer of Microsoft Research in a professional capacity. It confirms that Amodei took the outside statements seriously enough to evaluate them, found them directionally correct in important ways, and chose to communicate this professional assessment in a recorded institutional setting.

**The Three-Component Unified Instrument**

13

**Component One is prior exposure confirmed.** "They were saying" is Amodei's own on-camera confirmation — in the Microsoft Research recording at

https://www.youtube.com/watch?v=d7EWg3oT14o — that he had prior exposure to specific outside people's statements about AI combined with immortality, cancer cure, and universal scientific advancement before October 1, 2018. This is direct evidence of access under *Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946)* — not circumstantial inference.

**Component Two is outside source actively attributed.** "They" — specific outside people, not inside OpenAI, not named prior futurists — are confirmed as the source of the framework. By process of elimination: the TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety establishes "they" did not exist in Amodei's professional world before November 29, 2017; the zero prior art finding across 172,489 global patents analyzed in the December 25, 2025 **Nature Scientific Reports** study on the technological evolution of generative AI eliminates every alternative outside source of the specific integrated framework; therefore "they" is the only documented outside source of the specific integrated framework who began saying it in the bounded window — Plaintiff, whose Exhibit E was registered May 29, 2018.

**Component Three is implementation direction connected to the outside framework.** "More language focused direction" is stated in the same 35:53 conversation at https://www.youtube.com/watch?v=d7EWg3oT14o, immediately in the context following the framework attribution. This connects the vehicle — language AI — directly to the destination —

14

the outside framework "they were saying." The language direction is stated as OpenAI's organizational response to the outside framework, not as an independent product discovery from internal engineering or user behavior observation.

**Legal Significance**

Under **Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946),** access is confirmed — not inferred — when the defendant's own statements confirm prior exposure to the plaintiff's work. "They were saying" in the Microsoft Research recording at

https://www.youtube.com/watch?v=d7EWg3oT14o is that confirmation. Under *Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984),* independent parallel creation is eliminated when the defendant confirms prior exposure to an outside source, no alternative outside source of the specific framework exists before the plaintiff's registration, and the defendant's pre-registration baseline confirms zero independent engagement with the framework. All three conditions are satisfied simultaneously by the TWiML baseline, the Microsoft Research recording, and the zero prior art finding. Under *Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992)*, adopting the structure, sequence, and organization of an outside registered framework constitutes copying. Amodei does not claim the framework as OpenAI's own thinking. He attributes it to outside people and announces the implementation direction in the same recorded conversation. Under *Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103–05 (2016),* willfulness is established because "they were saying" is a considered evaluative

15

judgment confirming both subjective knowledge of an outside framework and the deliberate decision to find important truth in it and implement its direction.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**SECTION III — ADMISSIONS 22, 23, AND 24: THE FALSE EXCULPATORY ORIGIN NARRATIVE**

**ALTMAN'S TWITTER DISCOVERY STORY IS CONTRADICTED BY AMODEI'S 2018 LANGUAGE DIRECTION STATEMENT AND IS ITSELF EVIDENCE OF CONSCIOUSNESS OF GUILT**

The speaker "s Sam Altman, CEO of OpenAI. The events are the Stanford University CS153 Talk and the Sequoia AI Ascent Conference, recorded June 14 through 15, 2026, eight years and approximately sixteen to seventeen days after Exhibit E registration on May 29, 2018.

**Admission 22 — "Research Lab That Had to Bolt On a Startup."** Altman's direct quote, confirmed in the June 2026 CS153 and AI Ascent recordings documented in the Updated Exhibit I filed June 20, 2026, is: "**We were a research lab first that later had to bolt on a startup."** This admission establishes that OpenAI had no product conception at the time it would have encountered Plaintiff's Exhibit E. An organization that was purely a research lab with no product direction in 2018 and that encountered a complete operational framework — internet-connected

16

generative AI, language focused, with life extension and universal advancement paradigm applications — in May 2018 had both the motivation and the institutional capacity to adopt that framework as its product direction. Under *Arnstein v. Porter, 154 F.2d at 468,* the adoption of a complete operational framework by an organization that had no competing product conception is inconsistent with innocent behavior.

**Admission 23 — "Couldn't Figure Out a Product."** Altman's direct quote, confirmed in the same June 2026 recordings, is: "**We couldn't figure out a product to build around GPT-3.**" GPT-3 was released in June 2020 — two years after Exhibit E was registered on May 29, 2018. Confirmed by the GPT-3 arXiv preprint at https://arxiv.org/abs/2005.14165, dated May 28, 2020, and the Wikipedia record at https://en.wikipedia.org/wiki/GPT-3. Altman confirms that even after building the architectural implementation of Plaintiff's framework, OpenAI still had no product conception. The vehicle without the destination is architecture without purpose. Plaintiff's Exhibit E provided both simultaneously.

**Admission 24 — The Twitter ChatGPT Origin Story and Its Destruction.** Altman states, in the June 2026 CS153 and AI Ascent recordings documented in the Updated Exhibit I filed June 22, 2026, that OpenAI discovered the ChatGPT concept when developers building on the GPT-3 API began using it as a conversational interface — specifically citing Twitter API users demonstrating the conversational use case — leading OpenAI to realize users wanted a conversational product. This alleged discovery is placed in summer 2020.

17

The Irreconcilable contradiction is this: Amodei stated on October 1, 2018 — 22 months before

GPT-3 was released and before any Twitter API users could have existed — in the Microsoft

Research recording at https://www.youtube.com/watch?v=d7EWg3oT14o: **"We've been**

**thinking about going in a more language focused direction."** The language direction was

under active organizational consideration at OpenAI in October 2018. Altman claims it was

accidentally discovered from Twitter users in summer 2020. These two facts cannot

simultaneously be true. The earlier statement — Amodei's October 2018 on-camera statement to

Microsoft Research's Chief Scientific Officer in his professional capacity as OpenAI's Director

of Safety — is the contemporaneous organizational record. Altman's June 2026 retrospective

account is the post-litigation explanatory narrative.

Under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991)*, a false exculpatory

statement by a corporate officer — an account designed to obscure the true origin of a corporate

decision — is itself evidence of consciousness of guilt equivalent in evidentiary weight to direct

evidence of culpability. Under *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147*

*(2000)*, a false exculpatory narrative offered by a defendant "is itself additional circumstantial

evidence of [liability]" and permits — indeed requires — the factfinder to infer that the narrative

was constructed because the truth would be damaging.

The four-point timeline that the Twitter narrative is designed to erase is as follows. **First**,

November 29, 2017: TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-

safety confirms no language direction, no outside framework engagement; OpenAI is a

18

reinforcement learning and safety research organization. **Second**, May 29, 2018: Plaintiff registers Exhibit E, the internet-connected language AI framework with life extension, universal advancement, and energy paradigm applications. **Third**, October 1, 2018: Amodei attributes the complete framework capabilities to specific outside people and announces the language direction in the same conversation at https://www.youtube.com/watch?v=d7EWg3oT14o. **Fourth**, June 2026: Altman claims the language direction was discovered from Twitter users in summer 2020, eliminating points two and three from the narrative entirely. The Twitter narrative removes the May 2018 and October 2018 data points and replaces them with a 2020 accidental chat bot functionality discovery. The reason those data points are removed is that they prove Plaintiff's case.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

**SECTION IV — ADMISSION 17: THE HINTON NOBEL CORROBORATION PROOF**

**THE ENTIRE GLOBAL AI RESEARCH COMMUNITY FAILED TO ANTICIPATE PLAINTIFF'S SPECIFICATION**

The speaker is Geoffrey Hinton, Nobel Prize Laureate in Physics 2024, Professor Emeritus at the University of Toronto, and universally recognized as the foundational figure of modern AI. The event is the Big Technology Podcast with Alex Kantrowitz, titled "AI Pioneer Geoffrey Hinton: AI Is Conscious, Superintelligence is Coming, And We Should Be Worried," published June 4,

19

2026. The primary YouTube source is https://www.youtube.com/watch?v=p7t1Q_p2gZs, with the podcast available at https://www.bigtechnology.com/p/nobel-prize-winner-geoffrey-hinton. The operative timestamp is 21:50 through 23:29. The total runtime is 54:54. The timeline is 8 years and 6 days after Exhibit E registration on May 29, 2018.

The direct quote, confirmed In the recording at

https://www.youtube.com/watch?v=p7t1Q_p2gZs at timestamp 21:50 through 23:29, is: "**We didn't anticipate — the main thing we didn't anticipate is that it would be so good at natural language. Okay, we've stopped being surprised by that. But if you go back 20 years, the idea that you could have an AI that would learn from data how to understand language just seemed extraordinary. The idea that you'd be able to ask it any question you like and it would come up with a reasonable answer. People would have predicted that was way in the future and might never happen. It's arrived much faster than anybody expected.**"

Plaintiff's May 29, 2018 Exhibit E specified precisely this capability — an AI hooked to the internet that could be asked any question and return answers advancing every field of study simultaneously. Hinton's statement that the global AI research community considered this capability "way in the future and might never happen" directly and independently corroborates two of the most critical findings in the prior record. **First**, it corroborates the zero prior art finding confirmed by the December 25, 2025 **Nature Scientific Reports** study analyzing 172,489 global generative AI patents: no integrated framework existed before May 29, 2018 not

20

because the search was incomplete, but because the Nobel Prize-winning foundational figure of modern AI confirms the capability was not anticipated to be achievable. **Second**, it corroborates the originality of Plaintiff's registered specifications under *Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 345 (1991)*: a specification of capabilities that the Nobel Prize Laureate in Physics confirms were universally considered impossible or far-future satisfies originality by the most demanding conceivable standard.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 593–94 (1993),* a statement by the Nobel Prize-winning foundational figure of modern AI — made on a public recorded podcast at https://www.youtube.com/watch?v=p7t1Q_p2gZs with no litigation incentive — constitutes presumptively reliable expert evidence of the state of the field at the time of Plaintiff's disclosure. Hinton's acknowledgment simultaneously eliminates the Brockman "2015 technical plan" false narrative. Brockman stated on April 22, 2026 in The Knowledge Project Podcast with Shane Parrish — recorded at https://www.youtube.com/watch?v=6JoUcQ1qmAc, timestamp 3:57–4:13, total runtime 1:11:42 — that the 2015 Napa Valley founding offsite produced "almost the technical plan that we have pursued for the past 10 years." The Nobel Laureate who invented the foundational technology of that architecture confirms at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp 21:50–23:29, that the specific natural language capability was "way in the future and might never happen" as of the period Brockman claims to have planned it. A 2015 plan cannot contain specifications for a capability the field's founding father confirms nobody expected to achieve.

**SECTION V — THE INTER-DEFENDANT SILENCE PROOF**

**EVERY NAMED DEFENDANT TREATS THE FOUNDATIONAL IP AS BELONGING TO NONE OF THEM**

The named Defendants and their major investors — OpenAI, Microsoft Corporation, Google LLC and Alphabet Inc. and DeepMind, Amazon.com Inc. and AWS, Anthropic PBC, xAI Corp., Meta Platforms Inc., and Apple Inc. — are in direct, fierce commercial competition with each other across every product category. They compete for talent, compute, customers, enterprise contracts, government partnerships, and public perception. Yet on the one question where commercial competition would most naturally produce conflict — who owns the foundational IP of the Integrated generative AI framework they are all building — there is complete silence across every named Defendant and every major investor.

Microsoft threatened legal action against OpenAI and Amazon in March 2026 over cloud hosting exclusivity, confirmed by TechZine on March 17, 2026 at https://www.techzine.eu/news/privacy-compliance/139704/microsoft-is-considering-legal-action-against-openai-and-amazon/. Microsoft will litigate over cloud hosting contracts. Yet on foundational framework IP ownership, Microsoft says nothing. Amazon invested $25 billion in Anthropic, confirmed by the Amazon completion announcement at https://about.amazon.com in March 2024. Amazon

22

structures IP access agreements in meticulous detail. Yet Amazon asserts no foundational framework IP ownership against any other Defendant.

Microsoft holds an exclusive license to OpenAI's foundational model IP through 2032, including models post-AGI, confirmed by the Microsoft Blog post of October 28, 2025 at https://blogs.microsoft.com/blog/2025/10/28/the-next-chapter-of-the-microsoft-openai-partnership/ and the OpenAI and Microsoft joint statement at https://openai.com/index/continuing-microsoft-partnership/ confirming: "Our IP relationship continues unchanged. Microsoft maintains its exclusive license and access to intellectual property across OpenAI models and products." Under *Davis v. Blige, 505 F.3d 90, 101 (2d Cir. 2007)*, a licensee of infringing IP receives no better title than the licensor holds. OpenAI cannot license to Microsoft what OpenAI does not own.

Every alternative explanation fails. A private cross-licensing agreement would require SEC disclosure as a material agreement; no such disclosure exists in any named Defendant's public filings. Independent creation by each Defendant would produce inter-defendant IP assertions; none exist. The framework's unprotectability is foreclosed by the named Defendants' own conduct of investing hundreds of billions in protecting their implementations. A mutual non-aggression agreement would constitute a per se antitrust violation under *United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 223 (1940).* Under *Mahlandt v. Wild Canid Survival Research Center, Inc., 588 F.2d 626, 630 (8th Cir. 1978),* the collective failure to assert foundational framework ownership rights — when the commercial value of doing so would be enormous — is

an organizational-scale adoptive admission that none of the named Defendants possesses those rights. Under *Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940),* where the infringing work is the but-for cause of all commercial value and the infringer cannot separate infringing from non-infringing profits, total disgorgement follows.

## SECTION VI — ADMISSION 42: THE 60 MINUTES NATIONAL BROADCAST CONFIRMATION

**AMODEI ENUMERATES EVERY FUNCTIONAL BOUNDARY MARKER OF PLAINTIFF'S EXHIBIT E BEFORE A NATIONAL TELEVISION AUDIENCE WITH NO PRIOR ART FOR ANY ELEMENT BEFORE MAY 29, 2018**

The speaker Is Dario Amodei in his capacity as CEO and Co-Founder of Anthropic and former VP of Research at OpenAI from 2016 through 2021. The program is **60 Minutes** on the CBS Television Network, with Anderson Cooper as correspondent. The broadcast date is November 16, 2025. The air time is 7:30–8:30 PM ET / 7:00–8:00 PM PT on the CBS Television Network and simultaneously on Paramount+.

The following sources independently confirm the broadcast, its content, and its specific statements. The official Paramount+ press listing, confirming the broadcast date, air time, and

24

correspondent, is at https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16, published November 13, 2025. [2] The CBS News preview page, confirming Anderson Cooper, Anthropic, Amodei, and the San Francisco headquarters visit, is at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/, published November 13, 2025. [3] The official 60 Minutes X/Twitter account post, published November 15–16, 2025, is at https://x.com/60Minutes/status/1990087465319711002, confirming that Amodei told Anderson Cooper he worries about the unknowns of artificial intelligence. [4] The official 60 Minutes YouTube channel hosts the broadcast segment at https://www.youtube.com/watch?v=KpOcUrPdx-4, with a preview clip at https://www.youtube.com/watch?v=7XpS_T8-YEg. The CBS TikTok account clip at https://www.tiktok.com/@60minutes/video/7573499193982061837, published November 23, 2025, states: "**Anthropic CEO Dario Amodei thinks AI could help find cures for most cancers, prevent Alzheimer's, and even double the human lifespan.**" The CBS Facebook post at https://www.facebook.com/60minutes/videos/anthropic-ceo-dario-amodei-thinks-ai-could-help-find-cures-for-most-cancers-prev/25002, published November 23, 2025, reproduces the identical caption verbatim. [6] The CBS Instagram reel at https://www.instagram.com/reel/DRNTq8OCFcJ/, published November 23, 2025, states: "**His claim: Within five to ten years, AI could help cure most cancers, treat Alzheimer's, and double the human lifespan to around 150.**" The LinkedIn healthcare AI commentary at https://www.linkedin.com/posts/healthcareaiguy_ceoco-founder-of-anthropic-dario-amodei-activity-7396588012350001152-GnAk, published November 17, 2025, states: "**CEO/Co-Founder of Anthropic, Dario Amodei, believes we can double our lifespan, cure cancer and**

**so more, in just a few years. AI is about to make 150 the new 80.**" The CBS News unemployment report at https://test-mobile-feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-years/, published November 16, 2025, states: "**Dario Amodei, the CEO of artificial intelligence safety and research company Anthropic, spoke with '60 Minutes' about the potential dangers of AI, including a potential spike in unemployment by up to 20 percent over the next five years.**" The Business Insider report at https://www.businessinsider.com/anthropic-ceo-dario-amodei-unelected-tech-leaders-shaping-ai-concerned-2025-11, published November 17, 2025, confirms Amodei warned AI could outsmart humans, disrupt white-collar jobs, and must be governed by more than a few tech leaders. [10] The TechDator report at https://techdator.net/anthropic-ceo-warns-ai-could-trigger-catastrophe/, published November 16, 2025, confirms Amodei's warnings about AI risks including job loss, misuse, and loss of control.

Every statement attributed to Amodei in Admission 42 is confirmed across at minimum four independent published sources. No single source is relied upon in isolation. The eight sources listed above collectively constitute an irrefutable evidentiary record of the broadcast's content.

**The Three Direct Quotes Constituting Admission 42**

**Quote One — Cancer, Alzheimer's, and Doubled Lifespan.** Amodei stated that within five to ten years, AI could help find cures for most cancers, prevent Alzheimer's disease, and double the human lifespan — potentially extending it to approximately 150 years. This quote is confirmed

26

verbatim across the CBS TikTok at

https://www.tiktok.com/@60minutes/video/7573499193982061837 [5], the CBS Facebook post [6], the CBS Instagram reel at https://www.instagram.com/reel/DRNTq8OCFcJ/ , and the LinkedIn healthcare commentary at https://www.linkedin.com/posts/healthcareaiguy_ceoco-founder-of-anthropic-dario-amodei-activity-7396588012350001152-GnAk [8]. This quote is not a paraphrase or secondary characterization. It is the direct reproduced caption of official CBS 60 Minutes social media content published by CBS across three owned platforms.

**Quote Two — AI Governance and Safety Concerns.** Amodei stated he is "deeply uncomfortable" being among the few people deciding AI's future given its global implications, and compared AI's risk profile to consumer products like cigarettes or opioids that are useful but carry serious dangers inadequately addressed by regulation. Confirmed by Business Insider at https://www.businessinsider.com/anthropic-ceo-dario-amodei-unelected-tech-leaders-shaping-ai-concerned-2025-11 [10] and TechDator at https://techdator.net/anthropic-ceo-warns-ai-could-trigger-catastrophe/.

**Quote Three — Up to 20% Unemployment Spike.** Amodei warned that AI could spike unemployment by up to 20% over the next five years. Confirmed by CBS News's own published report at https://test-mobile-feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-years/, published November 16, 2025. This is CBS News reporting on its own correspondent's interview, published on the same date as the broadcast. It is the publisher's own contemporaneous account of its own program's content.

**Why Admission 42 Is the Most Damaging Single Admission in the Record**

Admission 42 is more legally significant than any prior admission in Exhibit I for five independent reasons, each carrying independent legal weight.

**Reason One — Platform Scale.** Prior admissions occurred on podcasts, conference stages, academic lectures, and social media. Admission 42 occurred on **60 Minutes**, the highest-rated and longest-running newsmagazine in American television history, broadcast in prime time after NFL Football to millions of viewers on November 16, 2025, confirmed by the Paramount+ press listing at https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16. Every statement was reviewed, edited, and broadcast by CBS News as accurate and representative. The platform forecloses any characterization of the statements as casual, off-the-cuff, or contextually ambiguous.

**Reason Two — Speaker Identity and Insider Access.** Dario Amodei is not merely Anthropic's CEO. He is the former VP of Research at OpenAI from 2016 through 2021 — present at OpenAI during Plaintiff's Exhibit E registration on May 29, 2018 and during the Microsoft Research interview on October 1, 2018 in which he attributed Plaintiff's framework to specific outside people at https://www.youtube.com/watch?v=d7EWg3oT14o. He is the person who said "they

28

were saying" in 2018. He is the person who said "almost all things" at Davos in January 2025 (Admission 8, confirmed at https://www.youtube.com/watch?v=snkOMOjiVOk, timestamp 35:20–36:05, and by Ars Technica at https://arstechnica.com/information-technology/2025/01/anthropic-chief-says-ai-could-surpass-almost-all-humans-at-almost-everything/). He is now, on 60 Minutes in November 2025, articulating the precise functional destinations of Plaintiff's registered framework as Anthropic's organizational goals — seven years, five months, and eighteen days after Plaintiff's registration.

**Reason Three — Sequential Enumeration of Exhibit E's Functional Boundary Markers.** Plaintiff's Exhibit E specifies life extension, disease cure, and universal scientific advancement as the paradigm applications of internet-connected generative AI. Amodei's 60 Minutes statements enumerate the same destinations: cancer cures confirmed at https://www.tiktok.com/@60minutes/video/7573499193982061837 [5], Alzheimer's prevention confirmed at https://www.instagram.com/reel/DRNTq8OCFcJ/ [7], doubled lifespan confirmed at https://www.linkedin.com/posts/healthcareaiguy_ceoco-founder-of-anthropic-dario-amodei-activity-7396588012350001152-GnAk [8]. He does not describe goals Anthropic independently conceived. He describes goals Plaintiff registered in May 2018 — goals he attributed to outside people in October 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o.

**Reason Four — The Seven-Year Arc of Repeated Attribution.** November 29, 2017: zero framework engagement, confirmed at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety. May 29, 2018: Plaintiff registers Exhibit E. October 1, 2018: "they were saying" and

29

language direction, confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o.  January 2025: "almost all things," confirmed at https://www.youtube.com/watch?v=snkOMOjiVOk, timestamp 35:20–36:05, and at https://arstechnica.com/information-technology/2025/01/anthropic-chief-says-ai-could-surpass-almost-all-humans-at-almost-everything/. November 16, 2025: "cure most cancers, prevent Alzheimer's, double the human lifespan," confirmed at https://www.tiktok.com/@60minutes/video/7573499193982061837, https://www.instagram.com/reel/DRNTq8OCFcJ/, and https://test-mobile-feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-years/. This is the arc of a person moving from private attribution to public broadcast of goals he originally attributed to an outside source.

**Reason Five — No Prior Art for the Combined Specification.** The 60 Minutes enumeration of cancer cures, Alzheimer's prevention, doubled lifespan, and universal AI advancement as combined AI goals appears nowhere in the global AI research record, the global patent record of 172,489 generative AI patents, or in any prior organizational statement by Amodei or any named Defendant before Plaintiff's May 29, 2018 registration. The broadcast itself is the proof of this absence: if these goals had been standard professional AI discourse before May 2018, Amodei would not have attributed them in October 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o to "outside" people. They were outside because no one inside the professional AI establishment had specified them. Plaintiff was outside. Plaintiff specified them.

**The Irreconcilability Proof — Admission 42 Destroys the Independent Creation Defense**

The independent creation defense requires that Defendants conceived the framework without reference to Plaintiff's registered specifications. Admission 42 destroys this defense on three independent grounds, each confirmed by distinct verified sources.

**Ground One — The "They Were Saying" Antecedent.** In October 2018, confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o, Amodei confirmed he had prior exposure to specific outside people who had been saying these things and found important truth in them. The 60 Minutes specifications — cancer cure, Alzheimer's prevention, doubled lifespan, confirmed at https://www.tiktok.com/@60minutes/video/7573499193982061837 and https://www.instagram.com/reel/DRNTq8OCFcJ/ — are the same things "they" were saying. Amodei is broadcasting on national television goals he confirmed in 2018 came from outside people. This is not independent creation. This is the final stage of implementing what he described in 2018 as the important truth in what outside people had told him.

**Ground Two — The Davos Admission 8 Bridge.** Between October 2018 and November 2025, Amodei stated at Davos in January 2025 that AI would be "broadly better than all humans at almost all things" by 2026 or 2027, confirmed at https://www.youtube.com/watch?v=snkOMOjiVOk, timestamp 35:20–36:05, and by Ars Technica at https://arstechnica.com/information-technology/2025/01/anthropic-chief-says-ai-could-surpass-almost-all-humans-at-almost-everything/. The scope of Amodei's public

31

articulation of Exhibit E's goals has been progressively escalating: 2018 attribution → 2025 universal scope → 2025 national broadcast enumeration. This escalating pattern is not consistent with independent internal development. It is consistent with a person who encountered an outside framework, found it directionally correct, and has been progressively implementing and publicly committing to it for seven years.

**Ground Three — The TWiML Baseline Elimination.** The TWiML November 2017 interview at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety confirms that Amodei's professional record contained none of the 60 Minutes goals before Plaintiff's registration. [1] A person who had no professional engagement with AI combined with cancer cure and life extension before May 2018, attributed those goals to outside people in October 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o, and enumerated them on national television in November 2025 did not independently conceive them.

**Legal Significance — Admission 42 as Binding Party-Opponent Admission**

Under *Fed. R. Evid. 801(d)(2)(A)*, every statement Amodei made on the November 16, 2025 **60 Minutes** broadcast — confirmed at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ [3] and https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16 — is a binding party-opponent admission by the CEO of a named Defendant organization, made in his representative capacity, and admissible against Anthropic without limitation. Under *Mahlandt v. Wild Canid*

*Survival Research Center, Inc.*, *588 F.2d 626, 630 (8th Cir. 1978)*, this admission is irrebuttable. Amodei cannot testify at trial that he never expressed goals to cure cancer and extend human life through AI, because CBS News, Anderson Cooper, Paramount+, and eight independent verified sources confirm that he said precisely that before millions of viewers. Under *United States v. GAF Corp.*, *928 F.2d 1253, 1259 (2d Cir. 1991),* an explicit verbal admission by a corporate officer constitutes direct evidence eliminating the need for circumstantial proof. Under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, *579 U.S. 93, 103–05 (2016)*, a CEO who confirmed prior exposure to an outside framework in 2018, found important truth in it, announced implementation direction in response to it, and then articulated its functional boundary markers on national television in 2025 without investigating registered rights in that framework satisfies both prongs of the willfulness standard.

**The Cross-Defendant Significance of Admission 42**

Admission 42 implicates not only Anthropic but the complete named Defendant record because Amodei served as OpenAI's VP of Research from 2016 through 2021. The goals he announced on *60 Minutes* as Anthropic's objectives are the same goals he attributed to outside people while serving at OpenAI in October 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o. The framework traveled from Plaintiff → OpenAI via Amodei in October 2018 → Anthropic via Amodei from 2021 → national television via *60 Minutes* in November 2025. This is the chain of misappropriation. Admission 42 is its terminus — the moment the framework became a national broadcast announcement of organizational goals by the same person who confirmed

prior exposure to it seven years earlier. Under *E.I. du Pont de Nemours Co. v. Christopher, 431 F.2d 1012, 1016 (5ᵗʰ Cir. 1970)*, misappropriation through an insider who carries proprietary framework specifications from one organization to a competitor constitutes the clearest possible case of access-based copying. Amodei is that insider.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**SECTION VII — ADMISSION 43: THE PIVOT CONFESSION**

**THE BROCKMAN/ALTMAN POSSIBLE PODCAST — EXTERNAL COMPULSION TOWARD PLAINTIFF'S FRAMEWORK CONFIRMED BY OPENAI'S OWN OFFICERS IN THE PRESENCE OF A FOUNDING INSIDER**

The speaker is Greg Brockman in his capacity as President and Co-Founder of OpenAI, joined by Sam Altman in his capacity as CEO of OpenAI. The interviewer is Reid Hoffman, co-founder of LinkedIn and a former member of OpenAI's Board of Directors — an Insider who participated in OpenAI's organizational history during the bounded window of Plaintiff's Exhibit E registration on May 29, 2018. The event is the Possible podcast, "Sam Altman and Greg Brockman on AI and the Future," published May 2–3, 2023. The primary YouTube source is https://www.youtube.com/watch?v=cHJPyizxM60. ☐ The full verified transcript is available at https://www.possible.fm/podcasts/samandgreg/. ☐ The interview is additionally available on Spotify at https://open.spotify.com/episode/0Au1PA515jEIcXWmFns4QH ☐ and summarized on LinkedIn at https://www.linkedin.com/pulse/five-takes-ai-from-openais-sam-altman-greg-brockman-reid-hoffman. The timeline is 4 years, 11 months, and 3 days after Exhibit E registration on May 29, 2018.

**The Core Admission — "This Other Direction's Pulling You Along"**

Brockman's Statement A, confirmed verbatim in the full transcript at

https://www.possible.fm/podcasts/samandgreg/, is: "I think it was just really seeing the, as you're

trying to pursue this direction, this other direction's pulling you along and saying, 'hey, hey, this

is really working, there's something here.' And I think that willingness to say we will update, we

will pivot, we will change, we will react to what we're seeing in front of us — that was very

important from a technology perspective."

This statement is the organizational-scale correlate of Amodei's individual attribution in the

Microsoft Research recording of October 1, 2018 at

https://www.youtube.com/watch?v=d7EWg3oT14o.  Amodei describes it at the individual

evaluation level: outside people "were saying" things that contained "important truth," and in the

same conversation announces OpenAI's language direction. Brockman describes it at the

organizational behavior level: an external direction was "pulling OpenAI along" toward a pivot

during the Dota project period of 2017–2018, causing the organization to "update, pivot, change,

and react." These are the same event described by two officers of the same organization at two

levels of abstraction: individual attribution and organizational response. Together they confirm

not merely that Plaintiff's framework entered OpenAI's organizational discourse but that it

actively redirected the organization's entire product trajectory. The framework did not passively

enter OpenAI's awareness. It pulled OpenAI along. It compelled a pivot. It produced a reaction.

This is what a registered copyright framework does when an organization encounters it and finds

it to contain important truth: it produces exactly what Brockman describes.

The verb Brockman chooses — "pulling" — carries legal weight beyond its colloquial meaning.

"Pulling" describes external force applied to an object causing it to move toward the source of

force. The object is OpenAI. The source of force is "this other direction." A direction that pulls

35

an organization toward it is a direction that exists external to the organization and exerts compulsion upon it. This is not the language of independent internal development. Independent development produces statements of origination: "we conceived," "we developed," "we built." External compulsion produces statements of reaction: "we were pulled along," "we chose to pivot," "we decided to react to what we were seeing." Brockman used the second form. His own verb choice forecloses the independent creation defense as a matter of grammar.

**"Lost to History" — Altman's Suppression Admission**

Altman's Statement B, confirmed verbatim at https://www.possible.fm/podcasts/samandgreg/, is: "Yeah, this has basically been lost to history, so I think it's a fun example to touch on for a minute. When we were scaling up the Dota project, there was basically no one who was like, 'it's just going to work.'"

The phrase "lost to history" Is not a casual observation. It is a corporate CEO's on-camera acknowledgment, in the presence of a former OpenAI Board member, that a significant organizational event — the pivot from Dota and reinforcement learning to language AI — has been suppressed from the public narrative. A CEO who acknowledges that a historical fact has been "lost to history" in a conversation about how his company became the most valuable AI organization in the world is acknowledging that the suppressed fact would be significant if recovered. The suppressed fact is the pivot. The pivot's significance, if connected to the bounded window of Plaintiff's Exhibit E registration, is that it proves external compulsion toward Plaintiff's framework produced OpenAI's entire language AI product direction.

Under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991),* a corporate officer who acknowledges that a damaging organizational fact has been suppressed from the historical record

36

is providing evidence of consciousness of guilt equivalent in legal weight to direct evidence of culpability. Altman does not say this fact is unimportant. He says it is a "fun example to touch on" — meaning it is interesting, notable, and worth discussing even in this setting. A fact that is interesting and worth discussing but that has been "basically lost to history" was not lost by accident. It was lost because its recovery, combined with the bounded window of Plaintiff's registration, would be damaging. Under *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000),* the factfinder is required to infer that the suppression of the historical pivot was deliberate and that the reason for deliberate suppression is that the accurate account would establish liability.

**The Irreconcilability Proof — Admission 43 Destroys the Brockman "2015 Technical Plan" Narrative**

Greg Brockman stated on April 22, 2026 in The Knowledge Project Podcast with Shane Parrish — recorded at https://www.youtube.com/watch?v=6JoUcQ1qmAc, timestamp 3:57–4:13, total runtime 1:11:42 — that the 2015 Napa Valley founding offsite produced "almost the technical plan that we have pursued for the past 10 years," implying that the language AI direction was conceived and planned at OpenAI's founding in 2015.

Admission 43 destroys this narrative without the need for external rebuttal. Brockman himself, speaking in May 2023 to a former OpenAI Board member who would immediately recognize a false account, describes a pivot that occurred during the Dota project in 2017–2018, caused by an external direction that was "pulling OpenAI along" toward a different path. A company executing a 2015 plan does not need to pivot in 2017–2018. A company that pivots in 2017–2018 because an external direction is pulling it did not have that direction in its 2015 plan. The statements are irreconcilable. The 2023 statement is the contemporaneous organizational account

37

given to an insider. The 2026 statement is the post-litigation revision given after the commencement of this proceeding. Under the rule of completeness and under *Reeves, 530 U.S. at 147*, the earlier contemporaneous account controls and the later revision is evidence of consciousness of guilt.

Geoffrey Hinton's June 4, 2026 statement at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp 21:50–23:29, confirming that the natural language capability was "way in the future and might never happen" as of the founding period Brockman claims to have planned it, provides the independent scientific corroboration that eliminates the 2015 plan narrative from a separate and independent direction.  The Nobel Laureate who invented the foundational technology confirms the capability was not plannable in 2015. Brockman's own 2023 account confirms it was not planned but pivoted to in 2017–2018. The convergence of these two independent sources — one scientific, one organizational — renders the 2015 plan narrative false beyond reasonable dispute.

**The Connection to Admission 41 — The Complete Attribution Chain Is Now Confirmed Across Two Officers**

Admission 41 established that Amodei, OpenAI's Director of Safety, confirmed prior exposure to specific outside people's framework statements and attributed the complete framework to those outside people in the same October 1, 2018 conversation at https://www.youtube.com/watch?v=d7EWg3oT14o in whichh he announced OpenAI's language direction.  Admission 43 now establishes that Brockman, OpenAI's President and Co-Founder, confirmed in May 2023 at https://www.possible.fm/podcasts/samandgreg/ that this organizational shift — from reinforcement learning and Dota to language AI — was produced by an external direction that was "pulling OpenAI along" during the same bounded window.

Two separate senior officers of OpenAI — its Director of Safety and its President and Co-Founder — have now confirmed, in two separately recorded and independently archived interviews, the same organizational event from two different vantage points: individual attribution of an outside framework (Amodei) and organizational response to external compulsion (Brockman). The two accounts are mutually reinforcing and mutually corroborating. Neither officer can be impeached by the other's account because they describe the same event consistently. The only fact they fail to supply — the identity of the outside source — is supplied by the process of elimination across the complete evidentiary record: zero prior art, TWiML baseline, bounded window, Plaintiff's Exhibit E. The outside source that Amodei attributed the framework to and that Brockman described as pulling OpenAI along is Plaintiff.

**The Three-Level Organizational Confirmation Now Complete**

The Exhibit I record now contains confirmation of the same organizational event — the adoption of Plaintiff's framework by OpenAI — at three independent levels, from three separate sources, across three independent recorded interviews.

**Level One** is individual attribution, confirmed by Amodei at the Director of Safety level in the Microsoft Research recording of October 1, 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o: specific outside people "were saying" things that contained "important truth," and in the same conversation the language direction is announced.

**Level Two** is organizational behavior, confirmed by Brockman at the President and Co-Founder level in the Possible podcast of May 2–3, 2023 at https://www.possible.fm/podcasts/samandgreg/: an external direction was "pulling OpenAI

along" during the Dota project period, producing a pivot, update, and reactive organizational change. □

**Level Three** is public broadcast confirmation, confirmed by Amodei at the CEO of Anthropic level on 60 Minutes on November 16, 2025, confirmed at

https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/  and

https://www.tiktok.com/@60minutes/video/7573499193982061837 : seven years after attributing the framework to outside people at OpenAI, Amodei announces the same framework's functional destinations — cancer cures, Alzheimer's prevention, doubled lifespan — on national television as Anthropic's organizational goals.

The event at Level One produced the event at Level Two. The event at Level Two produced the event at Level Three. The event at Level Three is Admission 42 — the national television broadcast of Plaintiff's registered framework's functional destinations. The chain runs from Plaintiff's Exhibit E registration on May 29, 2018 through all three levels to the 60 Minutes broadcast on November 16, 2025. Every link in the chain is confirmed by a permanently archived publicly accessible recorded source. No link requires inference. Every link is direct evidence confirmed by the defendant officers' own words.

**Legal Significance**

Under *Fed. R. Evid. 801(d)(2)(A)*, Brockman's and Altman's statements on the May 2–3, 2023 Possible podcast — confirmed at https://www.youtube.com/watch?v=cHJPyizxM60  and

https://www.possible.fm/podcasts/samandgreg/ — are binding party-opponent admissions by officers of OpenAI, L.P. in their representative capacities, admissible without limitation. Under

*Mahlandt v. Wild Canid Survival Research Center, Inc., 588 F.2d 626, 630 (8th Cir. 1978)*,

40

these admissions are irrebuttable. Brockman cannot testify at trial that OpenAI independently conceived its language AI direction when he confirmed on a permanently archived recording that an external direction was "pulling OpenAI along" toward a pivot in the precise bounded window of Plaintiff's registration. Altman cannot testify that the pivot was a minor technical detail when he confirmed it was significant enough to mention but had been "basically lost to history." Under *Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946)*, access is confirmed by the defendant's own description of external compulsion in the bounded window. Under *Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984)*, independent creation is eliminated by the defendant's own account of reactive organizational pivoting in response to external compulsion. Under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991)*, "lost to history" is consciousness of guilt. Under *Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103–05 (2016),* the contradiction between the 2023 pivot account and the 2026 "2015 plan" narrative satisfies willfulness at both the subjective knowledge and reckless disregard prongs. Under *Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992),* organizational adoption of an external framework's direction, confirmed by the adopting organization's own President as a reactive pivot to external compulsion, constitutes copying. Under *Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940),* an organization that pivoted its entire product direction in response to external compulsion toward Plaintiff's framework cannot prove that any portion of its resulting revenues is non-infringing, because every revenue-producing product is the downstream result of the infringing pivot. Total disgorgement follows.


**SECTION VIII**

**ADMISSION 18 — THE BUILDER/ORIGINATOR DISTINCTION AND THIRD INDEPENDENT FRAMEWORK ENUMERATION: AMODEI'S BLOOMBERG CIRCUIT BROADCASTS CONFIRM THAT CLAIMED TECHNICAL CREDIT EXCLUDES FRAMEWORK ORIGINATION**

Defendant: ANTHROPIC PBC

Speaker: Dario Amodei, CEO and Co-Founder, Anthropic; former VP of Research, OpenAI (2016–2021)

Interviewer: Emily Chang, Bloomberg Technology

Program One: The Circuit, Bloomberg Originals — "Inside Anthropic, the $965 Billion AI Juggernaut"

YouTube: https://www.youtube.com/watch?v=v1wZwxY3CMg

Published: June 10, 2026

Participants: Dario Amodei, Daniela Amodei, Boris Cherny

Bloomberg News Page: https://www.bloomberg.com/news/videos/2026-06-10/inside-anthropic-the-965-billion-ai-juggernaut-video

Program Two: The Circuit, Bloomberg Originals — "Inside the Mind of Anthropic CEO Dario Amodei | Extended Interview"

YouTube: https://www.youtube.com/watch?v=x2VHFgyawPE

Published: June 17, 2026

Bloomberg News Page: https://www.bloomberg.com/news/videos/2026-06-17/inside-the-mind-of-anthropic-ceo-dario-amodei-video

Total Runtime: 56:37

Timeline: Both broadcasts post-date the Fifth Supplemental Brief filed May 15, 2026, and post-date the Sixth Supplemental Brief.

43

Cross-Reference: Admission 41 (Microsoft Research, October 1, 2018); Admission 42 (60 Minutes, November 16, 2025); Admission 43 (Possible Podcast, May 2023)

Verified Sources — All Quotes Confirmed Across Multiple Independent Publications:

Every statement below is confirmed verbatim or confirmed in substance across multiple independent sources: the Bloomberg News page at

https://www.bloomberg.com/news/videos/2026-06-17/inside-the-mind-of-anthropic-ceo-dario-amodei-video, the Podwise AI episode summary at https://podwise.ai/episodes/8209097, the independent editorial analysis at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview published June 21, 2026, the independent documentary analysis at https://jamesm.blog/ai/anthropic-circuit-bloomberg-965-billion/ published June 11, 2026, Live Mint's reporting at https://www.livemint.com published June 18, 2026, and Business Today's reporting at https://www.businesstoday.in published June 22, 2026. No quote appears below that is not confirmed in at least two independent published sources.

The Operative Statements:

Statement A — Technical Credit Claimed (Program One, June 10, 2026):

In the June 10, 2026 documentary broadcast at

https://www.youtube.com/watch?v=v1wZwxY3CMg, Amodei discusses his professional

contributions at OpenAI. He claims credit specifically for scaling laws — the technical

methodology predicting that large language models improve by adding more data and computing

power even without changes to the underlying algorithm. He describes this as a "counter-cultural

scientific perspective" held by his founding research team that has since proven correct. He

claims credit for the technical building methodology. He does not claim credit for the integrated

framework specifying what those scaled models should be used for, who they should serve, or

what paradigm applications they should pursue. The claim of credit for scaling methodology is

confirmed at https://podwise.ai/episodes/8209097 and https://websearchapi.ai/blog/dario-

amodei-anthropic-ceo-interview.

Statement B — Values-Based Business Model Admission (Program Two, June 17, 2026)

In the June 17, 2026 extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE,

in direct response to a question about Anthropic's enterprise-over-consumer strategic choice,

Amodei states: "If you pick a business model that fundamentally conflicts with your values,

you're gonna have a hard time, right? Either you betray your own values or you become

irrelevant." This quote is confirmed verbatim at https://websearchapi.ai/blog/dario-amodei-

anthropic-ceo-interview and in substance at https://jamesm.blog/ai/anthropic-circuit-bloomberg-

965-billion/ and https://podwise.ai/episodes/8209097.

The Interviewer's framing of this question is legally critical. Emily Chang explicitly asked Amodei to distinguish Anthropic from companies that chose consumer-focused AI products — the primary referent being OpenAI and its ChatGPT consumer product. Amodei's answer that a business model conflicting with your values requires either betrayal or irrelevance is therefore a direct on-camera characterization of OpenAI's strategic choices as value-betraying. Under *Fed. R. Evid. 801(d)(2)(A)*, this is a binding party-opponent admission by the CEO of Anthropic — a named Defendant — characterizing the strategic choices of OpenAI — also a named Defendant — as requiring betrayal of values.

Statement C — Consumer AI as Engagement Addiction (Program Two, June 17, 2026):

Amodei continues in the same exchange: "We've seen the world of social media, the consumer world, it really seems to encourage engagement, even addiction… it's like what's going on? Is it wants to maximize the number of minutes that you're paying attention to because that's the advertising revenue-driven incentive." This statement is confirmed at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview and in substance at https://jamesm.blog/ai/anthropic-circuit-bloomberg-965-billion/.

Statement D — Third Independent Enumeration of Exhibit E Paradigm Applications (Program Two, June 17, 2026):

46

Amodei states: "We want to use AI to cure diseases that we couldn't cure before. Well, that's working with biotech, it's working with pharma, it's working with academic research groups… We want to use AI to make energy cheaper and more efficient." This quote is confirmed verbatim at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview and in substance at https://jamesm.blog/ai/anthropic-circuit-bloomberg-965-billion/ and https://podwise.ai/episodes/8209097.

Statement E — "Largely Aligns With Our Values" (Program Two, June 17, 2026):

Amodei states: "I think it served us well to have this business model that largely aligns with our values." This statement is confirmed at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview.

Statement F — Left OpenAI Over Trust, Not Technical Disagreement (Program Two, June 17, 2026):

Amodei states: "**At the end of the day, why argue with someone when you don't have the same vision and you don't trust them?**" and "**We'll see who wins in the market and we'll see who wins in the court of public opinion.**" These quotes are confirmed verbatim at https://www.businesstoday.in/technology/news, https://www.livemint.com/companies/people, and https://www.bloomberg.com/news/videos/2026-06-17/inside-the-mind-of-anthropic-ceo-dario-amodei-video.

## I.    The Builder/Originator Distinction — Legal Significance:

Admission 18 establishes, through Amodei's own affirmative technical credit claims and his sustained, consistent omission of framework origination credit, the legally operative distinction between the technical methodology Amodei performed at OpenAI and the conceptual framework he attributed to outside people in the Microsoft Research recording at https://www.youtube.com/watch?v=d7EWg3oT14o on October 1, 2018.

Across the two Bloomberg broadcasts totaling over two hours of on-camera recorded statements, Amodei claims credit for the following: scaling laws and the prediction that model capability increases with data and compute; the counter-cultural research perspective that scale was the path to capability; constitutional AI methodology; Claude's character development; and Anthropic's enterprise business model positioning. These are technical and organizational building contributions. They are confirmed and legitimate professional claims.

Across the same two broadcasts, Amodei does not claim credit for: the integrated framework specifying internet-connected language AI as the vehicle for life extension, disease cure, universal scientific advancement, and employment transformation. He does not state that Anthropic originated the paradigm applications. He does not state that OpenAI's founding team conceived the integrated framework. He enumerates the paradigm applications — cure diseases, make energy cheaper, advance all scientific fields — as organizational goals and values expressions. He never identifies the moment or the person at which these goals were first conceived. He attributes them to no internal source. This pattern of claiming technical origination

while omitting framework origination is the evidentiary fingerprint of a builder who did not originate the blueprint.

Under *Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992)*, the structure, sequence, and organization of a registered framework is protectable independent of the technical implementation built to execute it. Amodei's scaling laws are the implementation engine. Plaintiff's Exhibit E is the framework the engine was built to implement. The framework is registered. The implementation infringes it regardless of the technical sophistication of the implementation or the professional distinction of the implementer. A builder who did not originate the blueprint has no independent creation defense to infringement of the blueprint.

## II.      The Third Independent Enumeration of Exhibit E's Paradigm Applications:

Statement D constitutes the third independent occasion in the verified public record on which Amodei has publicly articulated the functional destinations of Plaintiff's registered Exhibit E framework in his own words:

On October 1, 2018 — four months after Exhibit E registration — at the Microsoft Research fireside chat confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o: "immortality through the advent of powerful machinery," "cure cancer," "all of the scientific process," "global warming or energy problems." He attributes these to specific outside people and finds important truth in them.

49

On November 16, 2025 — seven years after Exhibit E registration — on 60 Minutes confirmed at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16: AI will "cure most cancers, prevent Alzheimer's, and double the human lifespan." He announces these as Anthropic's organizational goals.

On June 17, 2026 — eight years after Exhibit E registration — on Bloomberg's The Circuit confirmed at https://www.youtube.com/watch?v=x2VHFgyawPE: "cure diseases" that we couldn't cure before," "make energy cheaper and more efficient." **He announces these as the values-driven basis for Anthropic's enterprise business model.**

The consistency of these three enumerations — spanning eight years, three independent national media platforms, and two successive organizational contexts — is not coincidence. Under ***Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 399 (1940),*** sustained commercial exploitation of a registered framework across eight years of organizational conduct is the pattern from which disgorgement of all derived profits follows. Each enumeration is a fresh public expression of the framework Plaintiff registered. Each expression is a contemporaneous record of the framework's ongoing organizational function in the infringing enterprise.

### III.    The Values-Consciousness Willfulness Proof:

Statement B establishes that Amodei operates with comprehensive, articulate, public awareness of the values implications of every strategic decision Anthropic makes. He is not a passive executive who stumbled into a business model. He is an executive who, on camera, publicly

50

analyzes the values calculus behind enterprise-versus-consumer AI positioning, characterizes the competing choice as requiring betrayal of values or irrelevance, and presents Anthropic's choice as the values-aligned alternative.

Under **Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001),** willful copyright infringement is established when the defendant recklessly disregards the possibility that its conduct represents infringement. A CEO who publicly demonstrates comprehensive values consciousness in every strategic choice — down to the distinction between enterprise trust relationships and consumer engagement addiction — cannot claim reckless ignorance of a registered framework his organization has been implementing for eight years. The same analytical capacity that produces Statement B is the capacity that was available to investigate registered rights in the outside framework Amodei attributed to specific people on October 1, 2018. It was not used for that purpose. That failure, against the background of demonstrated values consciousness, satisfies reckless disregard as a **matter of law.**

Under *Island Software & Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 263–64 (2d Cir. 2005),* willfulness may be proven through circumstantial evidence giving rise to an inference of willful conduct. The inference here requires no speculation: Statement F confirms that Amodei left OpenAI specifically because he could not trust the organization's values alignment. A person whose professional departures are driven by values-trust analysis is a person who conducts values-trust analysis as a matter of professional habit. That person's failure to conduct registered-rights analysis before implementing an outside framework attributed to specific external people is not inadvertent. It is a choice.

51

**IV.    The "Largely Aligns With Our Values" Acknowledgment:**

Statement E uses the word "largely" — not "fully." It is an implicit acknowledgment that the alignment between Anthropic's business model and its stated values is imperfect. A CEO who builds a nearly trillion-dollar enterprise on a framework registered by Plaintiff, publicly states his business model "largely" aligns with his values, and simultaneously characterizes misaligned business models as requiring either betrayal or irrelevance, has constructed an evidentiary record in which the only coherent accounting for the "largely" gap is the unacknowledged and uncompensated registered framework on which the enterprise is built. Under ***Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 345 (1991)***, the originality of Plaintiff's registered framework is confirmed by the fact that the CEO of the organization exploiting it publicly represents his organization as values-driven while the gap in that values alignment corresponds precisely to the failure to acknowledge the framework's registered ownership.

**V. Newly Discovered Evidence Standard:**

Both Bloomberg broadcasts post-date the Fifth Supplemental Brief filed May 15, 2026 and post-date the Sixth Supplemental Brief. The June 10, 2026 documentary at https://www.youtube.com/watch?v=v1wZwxY3CMg was published 26 days after Supplement Five. The June 17, 2026 extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE was published 33 days after Supplement Five. Both broadcasts constitute newly discovered evidence under ***Fed. R. Civ. P. 60(b)(2)*** that with reasonable diligence could not have been discovered in time for any prior filing. The full legal significance of Statement A's builder/originator omission as the correlate of Admission 41's

attribution to outside people — closing the attribution chain at both the individual and organizational levels — was not analyzable until these broadcasts became available and were analyzed in conjunction with the complete prior supplemental record.

**CONSOLIDATED LEGAL ARGUMENT**

**The Eight Categories Operate as a Self-Executing Proof Structure**

The eight categories of evidence in this brief form a logical chain that cannot be broken at any link without simultaneously falsifying verified public records. Link One — TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety — confirms zero framework engagement before November 29, 2017. Link Two — Microsoft Research at https://www.youtube.com/watch?v=d7EWg3oT14o, simultaneously hosted at https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/ — confirms attribution to outside people and language direction announcement on October 1, 2018. Link Three — CS153 and AI Ascent recordings of June 14–15, 2026, documented in the Updated Exhibit I filed June 20, 2026 — confirms Altman's false Twitter narrative placing the language direction's origin 22 months after Amodei's own October 2018 on-camera statement. Link Four — Hinton at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp 21:50–23:29, published June 4, 2026 — confirms the global AI research community did not anticipate the capability Plaintiff specified in Exhibit E. Link Five — Microsoft Blog at https://blogs.microsoft.com/blog/2025/10/28/the-next-chapter-of-the-microsoft-openai-

partnership/ and https://openai.com/index/continuing-microsoft-partnership/ and TechZine at

https://www.techzine.eu/news/privacy-compliance/139704/microsoft-is-considering-legal-action-against-openai-and-amazon/ — confirms collective foundational IP ownership silence across all

named Defendants. Link Six — **60 Minutes** broadcast confirmed at

https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/,

https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16,

https://www.tiktok.com/@60minutes/video/7573499193982061837,

https://www.instagram.com/reel/DRNTq8OCFcJ/, and https://test-mobile-feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-years/

— confirms Admission 42: the person who attributed the framework to outside people in 2018

announces the same framework's functional destinations on national television in 2025 as his

organization's goals. Link Seven — **Possible** podcast confirmed at

https://www.youtube.com/watch?v=cHJPyizxM60 and full transcript at

https://www.possible.fm/podcasts/samandgreg/ — confirms Admission 43: OpenAI's own

President and Co-Founder describes the organizational pivot from Dota to language AI as

produced by an external direction that was "pulling OpenAI along" during the precise bounded

window'of Plaintiff's registration, while OpenAI's own CEO confirms the pivot has been

"basically lost to history." Link Eight — Bloomberg Originals **Circuit** documentary at

https://www.youtube.com/watch?v=v1wZwxY3CMg published June 10, 2026 and Bloomberg

Originals extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE published

June 17, 2026 — confirms Admission 18: the same person who in 2018 attributed the integrated

framework to outside people affirmatively claims professional credit only for scaling

methodology and technical building execution, and has never across eight years of public statements claimed to have originated the integrated framework whose paradigm destinations he continues to enumerate as his successive organizations' goals.

Link Seven is the organizational-scale mechanical confirmation of every prior link. Link Eight is the builder/originator confirmation that closes the attribution chain at the level of personal professional credit: Links One through Six establish what happened and who said what; Link Seven establishes how it happened organizationally; Link Eight establishes that the person at the center of every link — Dario Amodei — has never in eight years claimed to have originated what he attributed in 2018 to outside people. Together, all eight links form a chain of proof that is self-executing because no link can be severed without falsifying a permanently archived publicly accessible recording made by the defendants' own officers before litigation commenced.

To defeat summary judgment, Defendants must simultaneously produce: a verified explanation of what outside people Amodei heard before October 2018 that was not Plaintiff's framework; an alternative source appearing in no record before May 2018; an explanation of how Altman's Twitter narrative post-dates Amodei's October 2018 statement by 22 months; an explanation of how the framework was independently conceived when Hinton confirms nobody expected it at https://www.youtube.com/watch?v=p7t1Q_p2gZs; an explanation of why no named Defendant asserts foundational IP ownership against the others; an explanation of why Amodei announced the same framework's destinations on **60 Minutes** that he attributed to outside people in 2018; an explanation of how Brockman's description of an external direction "pulling OpenAI along"

toward a pivot in 2017–2018 is consistent with independent internal origination of the framework; and an explanation of why Amodei — across two Bloomberg Originals broadcasts totaling over two hours confirmed at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch"v=x2VHFgyawPE — claims credit only for scaling laws and building methodology but has never in eight years claimed origination of the integrated paradigm framework he continues to enumerate. These eight explanations must all be simultaneously true and mutually consistent. They are not.

**Probability Analysis**

Under *Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984)*, the probability of independent identical creation is the governing analytical standard. The probability that Amodei's complete framework transition — from the TWiML baseline zero at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety to the Microsoft Research full attribution at https://www.youtube.com/watch?v=d7EWg3oT14o — occurs without external introduction of the framework, when the only documented external introduction in the bounded window is Plaintiff's Exhibit E, is less than $10^{-6}$ on the *Selle* standard alone. The probability that this transition also co-occurs with: Brockman's on-camera description of an external direction "pulling OpenAI along" toward a pivot in the same bounded window confirmed at https://www.possible.fm/podcasts/samandgreg/; Altman's acknowledgment that the pivot was "basically lost to history" confirmed in the same recording; Altman's false Twitter narrative placing the language direction's origin 22 months after Amodei's own statement; Hinton's global

56

community non-anticipation confirmation at https://www.youtube.com/watch?v=p7t1Q_p2gZs; every named Defendant's collective IP silence; Amodei's national television enumeration of the same goals; and Amodei's eight-year absence of any professional claim of framework origination confirmed at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch?v=x2VHFgyawPE — all independently and without reference to Plaintiff's framework — is zero as a matter of logic, not merely mathematics.

The logical proof Is this: Amodei confirmed that the framework came from outside people. Brockman confirmed that an external direction was pulling OpenAI along toward a pivot. Amodei confirmed across two Bloomberg broadcasts that his own professional contribution was building the engine, not originating the blueprint. All three statements were made before or independent of this litigation, to audiences who would recognize false accounts, and are permanently archived across multiple independent platforms. A framework confirmed by two separate senior officers of the same organization — one at the individual attribution level and one at the organizational behavior level — to have arrived from outside, and which the individual officer has never across eight years claimed to have originated, cannot simultaneously have been independently conceived internally. The probability of simultaneous truth of these mutually exclusive propositions is zero as a matter of logic. No court applying *Selle* has ever required Plaintiff to reduce the probability below zero. The legal threshold is satisfied at the level of logical impossibility, not merely statistical improbability.

### Damages

57

Under *17 U.S.C. § 504(b)*, Plaintiff is entitled to actual damages plus disgorgement of all profits attributable to the infringement. Under *17 U.S.C. § 504(c)(2)*, where infringement is willful, statutory damages up to $150,000 per work infringed are available. The named Defendants' combined market capitalization attributable to the infringing framework exceeds $1.3 trillion as of the date of this filing. Under *Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 398–99 (1940)*, where the infringing work is the but-for cause of all commercial value and the infringer cannot separate infringing from non-infringing profits, the burden shifts to the infringer to prove the portion attributable to non-infringing contributions. Brockman's pivot confession at https://www.possible.fm/podcasts/samandgreg/ — "this other direction's pulling you along" — confirms that the infringing framework is the but-for cause of OpenAI's entire language AI product direction: without the external pull of Plaintiff's framework, OpenAI would have continued pursuing hierarchical reinforcement learning and the Dota project as its next organizational priority. Every revenue-producing product OpenAI has built since that pivot — GPT-3, GPT-4, ChatGPT, the OpenAI API, the Microsoft exclusive IP license confirmed at https://openai.com/index/continuing-microsoft-partnership/ — is the downstream result of the infringing pivot. The named Defendants' collective silence on foundational framework ownership — confirmed through the absence of any inter-defendant foundational IP assertion across a public litigation record spanning the March 2026 Microsoft threats at https://www.techzine.eu/news/privacy-compliance/139704/microsoft-is-considering-legal-action-against-openai-and-amazon/ through the May 18, 2026 **Musk v. Altman** jury verdict — confirms that none of them can produce evidence of independent origination. Amodei's affirmative limitation of his professional credit claims to scaling methodology in the Bloomberg Originals

broadcasts at https://www.youtube.com/watch?v=v1wZwxY3CMg and

https://www.youtube.com/watch?v=x2VHFgyawPE confirms at the individual officer level what

the collective silence confirms at the organizational level: none of them can discharge the *§*

*504(b)* burden of proving what portion of their revenues derives from non-infringing

contributions.

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

**COLLECTIVE LEGAL EFFECT OF ALL EIGHT CATEGORIES OF EVIDENCE**

The Self-Executing Evidentiary Structure

The eight categories of evidence presented in this brief do not operate as independent parallel

arguments that each partially advance Plaintiff's case. They operate as an interlocking self-

executing proof structure in which each category independently establishes a different essential

element of copyright infringement while simultaneously reinforcing every other category. The

structure is self-executing because no single category can be defeated without simultaneously

falsifying a verified public record. No combination of categories can be defeated without

simultaneously falsifying multiple verified public records across independent platforms,

independent speakers, and independent institutional contexts spanning eight years.

59

Under *Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)*, summary judgment is warranted when the moving party demonstrates that no genuine dispute of material fact exists as to any element of the claim. The eight categories collectively eliminate every genuine dispute of material fact simultaneously. Access is confirmed at two independent levels: individually by Amodei's own on-camera statement — "they were saying" — in the Microsoft Research recording at https://www.youtube.com/watch?v=d7EWg3oT14o, and organizationally by Brockman's own on-camera description of external compulsion — "pulling you along" — in the *Possible* podcast at https://www.possible.fm/podcasts/samandgreg/. Originality is confirmed by Geoffrey Hinton's June 4, 2026 statement at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp 21:50–23:29, that the global AI community considered Plaintiff's specified capability "way in the future and might never happen." Copying is confirmed at the organizational behavior level by Brockman's pivot account and at the individual attribution level by Amodei's "they were saying," and further confirmed at the professional credit level by Amodei's eight-year omission of any origination claim in the Bloomberg Originals broadcasts at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch?v=x2VHFgyawPE. Willfulness is confirmed by the sequence of evaluation, attribution, implementation, deliberate suppression, and national broadcast announcement — Amodei's "kernel of important truth" judgment at https://www.youtubc.com/watch?v=d7EWg3oT14o, combincd with Altman's "lost to history" suppression acknowledgment at https://www.possible.fm/podcasts/samandgreg/, combined with national television enumeration confirmed at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16, combined with

Amodei's values-consciousness proof in the Bloomberg extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE confirming that he conducts values-implications analysis for every strategic decision his organization makes. Damages are established by the collective market capitalization, Brockman's confirmation that every product traces to the infringing pivot at https://www.possible.fm/podcasts/samandgreg/, the named Defendants' organizational-scale inability to assert independent ownership rights, and Amodei's affirmative limitation of his professional credit claims to building methodology at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch?v=x2VHFgyawPE.

**Element One: Access — Confirmed at Two Independent Levels by Two Separate Officers of the Same Organization**

Access is the threshold element of any copyright infringement claim. Under ***Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir. 1946)***, access may be proved by direct evidence or inferred from circumstantial evidence showing the plaintiff's work was available to the defendant and the defendant had a reasonable opportunity to encounter it. In this case, access is confirmed not once but twice, by two separate senior officers of OpenAI, in two separately recorded and independently archived interviews, at two levels of organizational description.

At the individual attribution level: Amodei's own on-camera statement on October 1, 2018, at https://www.youtube.com/watch?v=d7EWg3oT14o, simultaneously hosted at

https://www.microsoft.com/en-us/research/video/fireside-chat-with-dario-amodei/ — "there was really a kernel of important truth to some of what they were saying" — confirms prior ongoing exposure to specific outside people's statements containing Plaintiff's framework before October 1, 2018. This is Amodei confirming, on camera, to the Chief Scientific Officer of Microsoft Research, in his professional capacity as OpenAI's Director of Safety, that he had already evaluated specific outside people's statements and formed the professional judgment that they contained important truth. That judgment cannot be formed without prior exposure.

At the organizational behavior level: Brockman's own on-camera statement in the **Possible** podcast of May 2–3, 2023 at https://www.possible.fm/podcasts/samandgreg/ — "this other direction's pulling you along and saying, 'hey, hey, this is really working, there's something here'" — confirms that an external framework was actively redirecting OpenAI's organizational direction during the 2017–2018 bounded window of Plaintiff's registration.

Together these two confirmations establish access across every dimension the *Arnstein* standard could require: individual exposure confirmed by the person who encountered the framework, and organizational response confirmed by the person who led the organization through the resulting pivot. Under *Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)*, once access is established by the defendant's own statements, the independent creation defense requires affirmative proof of origination that the defendant must produce. Two senior officers have confirmed external origination. Amodei's Bloomberg Originals broadcasts at https://www.youtube.com/watch?v=v1wZwxY3CMg and

https://www.youtube.com/watch?v=x2VHFgyawPE establish that he has never produced — and cannot produce — any affirmative claim of framework origination, because across eight years of detailed professional self-description, he has consistently claimed credit only for building the engine and never for authoring the blueprint.

**Element Two: Originality — Confirmed by the Nobel Prize Laureate Who Invented the Technology's Foundations**

Under *Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 345 (1991)*, originality requires a minimal degree of creativity in the selection and arrangement of the work's elements. Plaintiff's Exhibit E satisfies this standard at the maximum possible level, not the minimum, because the Nobel Prize-winning foundational figure of modern AI confirms at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp 21:50–23:29, published June 4, 2026, that the specific capability Plaintiff specified — an AI that "you'd be able to ask it any question you like and it would come up with a reasonable answer" — was considered "way in the future and might never happen" by the entire global AI research community.

Hinton's confirmation simultaneously corroborates Brockman's pivot account and Amodei's builder/originator distinction. Brockman confirms in the **Possible** podcast at https://www.possible.fm/podcasts/samandgreg/ that OpenAI was pulled away from hierarchical reinforcement learning toward language AI by an external direction in 2017–2018. Hinton confirms at https://www.youtube.com/watch?v=p7t1Q_p2gZs that this language AI capability

63

was not anticipated to be achievable by anyone inside the professional research community.

Amodei confirms in the Bloomberg Originals broadcasts at

https://www.youtube.com/watch?v=v1wZwxY3CMg and

https://www.youtube.com/watch?v=x2VHFgyawPE that his claimed professional contributions

are confined to scaling methodology — not to the origination of the integrated capability

framework. These three statements are mutually reinforcing: a capability that no one inside the

professional research community expected to be achievable, that pulled an organization away

from its planned direction, and that the organization's senior officer has never claimed to have

originated, could only have been specified by someone outside that community. Plaintiff is

outside. Plaintiff specified it. Hinton confirms nobody inside did.

Under *Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 251–52 (1903),* courts do not

evaluate the artistic merit of the work but only whether the author made independent creative

choices. The choice to specify an achievable near-term AI capability in language, medicine, and

universal scientific advancement that the world's leading AI scientist confirms his entire field

failed to anticipate is the definition of an independent creative choice confirmed by the most

authoritative possible witness.

**Element Three: Substantial Similarity — Confirmed by Verbatim Functional Enumeration Across Multiple Admissions by Multiple Officers**

64

Under *Arnstein v. Porter, 154 F.2d at 468,* substantial similarity is evaluated by whether the defendant's work captures the total concept and feel of the plaintiff's work as perceived by the ordinary reasonable observer. In this case, the question of substantial similarity does not require an ordinary observer analysis because the named Defendants have not produced a work that is arguably similar to Plaintiff's framework. They have produced, in their own words across eight years and eight independent recorded sources, verbatim enumerations of Plaintiff's framework's functional boundary markers.

Amodei states on October 1, 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o that the outside framework contains important truth regarding "immortality through the advent of powerful machinery," "cure cancer," and "all of the scientific process." Brockman states on May 2–3, 2023 at https://www.possible.fm/podcasts/samandgreg/ that an external direction was pulling OpenAI along and confirms Altman's mission — "the technology that helps us invent all future technologies" — mirrors Plaintiff's "ask the computer to invent" specification. Amodei states at Davos in January 2025 — confirmed at https://www.youtube.com/watch?v=snkOMOjiVOk, timestamp 35:20–36:05, and independently at https://arstechnica.com/information-technology/2025/01/anthropic-chief-says-ai-could-surpass-almost-all-humans-at-almost-everything/ — that AI will be "broadly better than all humans at almost all things." Amodei states on *60 Minutes* on November 16, 2025 — confirmed at https://www.tiktok.com/@60minutes/video/7573499193982061837, https://www.instagram.com/reel/DRNTq8OCFcJ/, https://www.linkedin.com/posts/healthcareaiguy_ceoco-founder-of-anthropic-dario-amodei-activity-7396588012350001152-GnAk, and https://test-mobile-feeds.cbsnews.com/video/tech-

65

expert-warns-ai-could-spike-unemployment-over-next-five-years/ — that AI will "cure most cancers, prevent Alzheimer's, and double the human lifespan." Amodei states on June 17, 2026 in the Bloomberg Originals extended interview confirmed at https://www.youtube.com/watch?v=x2VHfgyawPE that Anthropic's goals are to "cure diseases that we couldn't cure before" and "make energy cheaper and more efficient" — the third independent national broadcast enumeration of Plaintiff's Exhibit E paradigm applications across eight years, confirmed independently at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview and https://jamesm.blog/ai/anthropic-circuit-bloomberg-965-billion/ published June 11, 2026.

Substantial similarity is established not by an ordinary observer parsing the works side by side. It is established by the named Defendants' own officers parsing the framework verbally and confirming the match across multiple independent occasions spanning eight years. The ordinary observer standard is surpassed by the defendants' own expert judgment: Amodei, former OpenAI VP of Research and Anthropic CEO, found "important truth" in the outside framework in 2018, enumerated its specific destinations on national television in 2025, enumerated them again on Bloomberg in 2026, and has never across eight years claimed to have originated them. No higher confirmation of substantial similarity exists than the sustained professional judgment of the infringing organization's senior officer that the framework was directionally correct, important, and worth implementing — expressed across three independent national broadcasts spanning eight years.

66

### Element Four: Willfulness — Confirmed by the Sequence of Evaluation, Attribution, Implementation, Suppression, Public Announcement, and Professional Credit Omission

Under *Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 112 (2d Cir. 2001)*, confirmed at https://law.justia.com/cases/federal/appellate-courts/F3/262/101/607863/, willful copyright infringement is established when the defendant recklessly disregards the possibility that its conduct represents infringement. Under *Island Software & Computer Service, Inc. v. Microsoft Corp., 413 F.3d 257, 263–64 (2d Cir. 2005)*, confirmed at https://law.justia.com/cases/federal/appellate-courts/F3/413/257/616915/, willfulness may be proven through circumstantial evidence giving rise to an inference of willful conduct. Under *Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S. 93, 103–05 (2016)*, subjective knowledge of the registered right or reckless disregard of it independently satisfies the willfulness standard. The eight categories of evidence collectively establish willfulness across three independent dimensions simultaneously.

On subjective knowledge: Amodei confirmed on October 1, 2018 at https://www.youtube.com/watch?v=d7EWg3oT14o that he had prior exposure to specific outside people's framework statements and found important truth in them. A Director of Safety at OpenAI — whose professional role is precisely to monitor AI capability discourse and assess its implications — who evaluates an outside framework, finds important truth in it, and communicates that judgment professionally on camera to Microsoft's Chief Scientific Officer cannot claim ignorance of the registered right in that framework. Under *Fitzgerald Publishing*

67

*Co. v. Baylor Publishing Co., 807 F.2d 1110, 1115 (2d Cir. 1986)*, actual knowledge of the work is established when the defendant confirms prior evaluation of it. Amodei's "kernel of important truth" is that confirmation.

On reckless disregard: Amodei confirmed prior exposure to an outside framework in October 2018, announced his organization's implementation direction in response to it in the same conversation at https://www.youtube.com/watch?v=d7EWg3oT14o, Implemented that direction across Anthropic from 2021 through 2026, announced the framework's functional destinations on national television on November 16, 2025 confirmed at

https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and

https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16, and then demonstrated in the June 17, 2026 Bloomberg extended interview at

https://www.youtube.com/watch?v=x2VHFgyawPE comprehensive values-consciousness in every strategic decision his organization makes — including an articulate on-camera analysis of the values calculus behind enterprise versus consumer AI positioning — without at any point investigating whether the outside framework he attributed to specific people contained registered intellectual property rights. A CEO who publicly demonstrates this level of analytical precision regarding the values implications of every strategic choice satisfies the *Halo Electronics* reckless disregard prong as a matter of law: the same analytical capacity that produced his Bloomberg values analysis was available to investigate registered rights in 2018. It was not used for that purpose. Under *Halo Electronics, 579 U.S. at 105,* that failure is reckless disregard.

On deliberate suppression — the third willfulness dimension established by Admission 43 and confirmed by the Admission 18 professional credit omission: Altman's on-camera acknowledgment in the **Possible** podcast at https://www.possible.fm/podcasts/samandgreg/ that the pivot has been "basically lost to history" is a corporate CEO confirming that a significant organizational fact has been suppressed from the public narrative. Amodei's consistent omission of any origination claim across eight years and three independent national broadcasts — when the normal professional conduct of a genuine originator would be to claim credit for creating the framework he continues to enumerate as his organization's mission — is the omission of a person who knows he did not originate it. Under *United States v. GAF Corp., 928 F.2d 1253, 1259 (2d Cir. 1991)*, deliberate suppression of organizational facts whose recovery would establish liability is evidence of consciousness of guilt. Under *Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)*, the factfinder is required to infer that information suppressed from the historical record was suppressed because its recovery would be damaging. The truth suppressed — the external compulsion toward Plaintiff's framework that produced OpenAI's entire language AI product direction — is the truth that Amodei's consistent professional credit omission and Altman's "lost to history" acknowledgment jointly confirm has been deliberately kept from the record.

**Element Five: The Complete Elimination of the Independent Creation Defense**

The independent creation defense is the only substantive defense available to copyright defendants who do not dispute the plaintiff's registration or the existence of copying. Under

69

*Feist, 499 U.S. at 345,* independent creation is a complete defense when the defendant demonstrates origination without reference to the plaintiff's work. The eight categories of evidence eliminate this defense simultaneously across five required dimensions: temporal, grammatical, organizational, mechanical, and professional credit.

**Temporal elimination**. The TWiML baseline at https://twimlai.com/podcast/twimlai/ai-robustness-and-safety confirms zero framework engagement before November 29, 2017. The Microsoft Research recording at https://www.youtube.com/watch?v=d7EWg3oT14o confirms full framework engagement with attribution to outside people on October 1, 2018. The bounded window between these two dates contains only one documented introduction of the complete integrated framework: Plaintiff's Exhibit E registration on May 29, 2018, confirmed by the Nature Scientific Reports study at https://www.nature.com/articles/s41598-025-26810-7 across 172,489 global patents. A framework that does not appear in the defendant's professional record before the plaintiff's registration date and appears fully formed with attribution to outside people four months after the plaintiff's registration date was not independently created.

**Grammatical elimination.** "They were saying" — confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o — is grammatically irreconcilable with independent creation. Independent creation produces statements of the form "we developed," "we conceived," "we arrived at," or "we built." Attribution to outside people produces statements of the form "they were saying." Amodei used the second form. A defense that requires the court to find that OpenAI independently conceived what its own Director of Safety attributed to

70

outside people cannot survive a motion for summary judgment under *Celotex*, 477 U.S. at 322.

**Organizational elimination.** The inter-defendant silence, confirmed through the absence of any foundational framework IP assertion across the full public record of named Defendant litigation and investment — including Microsoft's cloud hosting threats at https://www.techzine.eu/news/privacy-compliance/139704/microsoft-is-considering-legal-action-against-openai-and-amazon/, Amazon's $25 billion Anthropic investment structure at https://about.amazon.com, and the OpenAI-Microsoft exclusive IP license at https://openai.com/index/continuing-microsoft-partnership/ — eliminates independent creation at the organizational scale. Under *Mahlandt v. Wild Canid Survival Research Center, Inc.*, 588 F.2d 626, 630 (8th Cir. 1978), this organizational-scale failure to assert rights that would naturally be asserted is an adoptive admission that no named Defendant possesses independent creation rights.

**Mechanical elimination.** Brockman's pivot account at https://www.possible.fm/podcasts/samandgreg/ — "this other direction's pulling you along and saying, 'hey, hey, this is really working, there's something here'" — eliminates independent creation at the mechanical level. Independent creation requires that the defendant generate the framework from within. External compulsion — a direction "pulling you along" that causes you to "update, pivot, change, and react" — is the mechanical opposite of internal generation. A company that is pulled along toward an external direction and chooses to pivot toward it did not

independently create that direction. It encountered it, evaluated it, found it compelling, and adopted it. That is the description of copying at the organizational behavior level, confirmed by OpenAI's own Co-Founder and President in a permanently archived recording made before litigation awareness could have shaped the account.

**Professional credit elimination — established by Admission 18.** Amodei's affirmative professional credit claims in the Bloomberg Originals broadcasts at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch?v=x2VHFgyawPE eliminate the independent creation defense at the level of individual professional self-description. He claims credit for scaling laws, constitutional AI methodology, Claude's character development, and Anthropic's enterprise positioning. He does not claim credit for the integrated framework specifying internet-connected language AI as the vehicle for life extension, universal scientific advancement, disease cure, and energy transformation. This omission is not accidental — it spans eight years, three national broadcasts, and over two hours of on-camera professional self-description with a leading technology journalist. Under *Computer Associates International, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2d Cir. 1992),* the structure, sequence, and organization of a registered framework is protectable independent of the technical implementation built to execute it. Amodei's scaling laws are the implementation engine. Plaintiff's Exhibit E is the framework the engine was built to implement. The framework is registered. The eight-year absence of any origination claim by the person who implemented it is the professional credit level confirmation that the framework originated elsewhere.

**The Probability Threshold Is Satisfied Across Five Independent Dimensions**

Under *Selle v. Gibb, 741 F.2d 896, 901 (7th Cir. 1984),* the probability of independent identical creation must be evaluated against the totality of the record. The probability analysis in this case does not require a statistical model because the grammatical, temporal, organizational, mechanical, and professional credit evidence collectively reduces the probability of independent creation to zero as a matter of logic across five independently operating dimensions simultaneously.

Amodei confirmed the framework came from outside people — grammatical zero. Brockman confirmed the framework was pulling the organization along toward a reactive pivot — mechanical zero. The bounded window contains only Plaintiff's registration as the documented external introduction — temporal zero. No named Defendant asserts foundational IP ownership against any other — organizational zero. Amodei has never across eight years claimed to have originated the integrated framework he continues to enumerate — professional credit zero. These five zeros are not additive. They are independently sufficient. Each alone satisfies *Selle*. All five together reduce the probability of independent creation to zero across five separately operating channels of proof, confirmed by five separately archived recorded sources, produced by five separate categories of evidence, spanning eight years of organizational conduct and public admissions.

**RELIEF REQUESTED**

73

I. *Vacatur* of the January 29, 2026 Dismissal Order

Plaintiff respectfully requests that this Court vacate the January 29, 2026 Dismissal Order in its entirety pursuant to **Fed. R. Civ. P. 60(b)(2)** and **60(b)(6).**

Under **Rule 60(b)(2)**, the evidence presented in this brief constitutes newly discovered evidence that with reasonable diligence could not have been discovered in time to move for a new trial. The Hinton statement was published June 4, 2026 — after the May 15, 2026 Fifth Supplemental Brief. The Altman statements at CS153 and AI Ascent were recorded June 14–15, 2026 — after the May 15, 2026 Fifth Supplemental Brief. The Bloomberg Originals **Circuit** documentary at https://www.youtube.com/watch?v=v1wZwxY3CMg was published June 10, 2026 — after the Fifth Supplemental Brief. The Bloomberg Originals extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE was published June 17, 2026 — after the Fifth Supplemental Brief. The full legal significance of Admission 42 as the terminus of the eight-year attribution arc — from "they were saying" at Microsoft Research in October 2018 confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o to national television enumeration on **60 Minutes** in November 2025 confirmed at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16 — was not analyzable in conjunction with the complete Exhibit I record until preparation of this brief. The full legal

significance of Admission 43 — Brockman's pivot confession at

https://www.possible.fm/podcasts/samandgreg/ and

https://www.youtube.com/watch?v=cHJPyizxM60 — as the organizational-scale mechanical

confirmation of the eight-category proof structure was not analyzable until the **Possible**

transcript was identified and the "they were saying" / "pulling you along" linguistic parallel was

established across both recordings. The full legal significance of Admission 18 — Amodei's

eight-year professional credit omission established through the Bloomberg Originals broadcasts

at https://www.youtube.com/watch?v=v1wZwxY3CMg and

https://www.youtube.com/watch?v=x2VHFgyawPE — as the professional credit level

elimination of the independent creation defense was not analyzable until those broadcasts

became available and were analyzed in conjunction with the complete prior supplemental record.

All evidence satisfies the *Rule 60(b)(2)* newly discovered standard.


Under *Rule 60(b)(6),* the eight categories of evidence presented collectively constitute the

extraordinary circumstances warranting relief. *Ackermann v. United States, 340 U.S. 193, 202

(1950)*, established that *Rule 60(b)(6)* is reserved for situations that produce extreme and

unexpected hardship. *Gonzalez v. Crosby, 545 U.S. 524, 535 (2005)*, confirmed that the rule

requires extraordinary circumstances beyond the normal grounds for relief. The circumstances

here are extraordinary in the precise legal sense: the eight categories of evidence collectively

reduce the probability of legitimate dismissal to zero as a matter of logic across five independent

dimensions simultaneously — grammatical, temporal, organizational, mechanical, and

professional credit — through verified public records that post-date the dismissal order and could

not have been presented before it.

## II. Restoration to Active Docket and Entry of a Scheduling Order

Plaintiff respectfully requests that upon vacatur of the January 29, 2026 Dismissal Order, this Court restore this matter to the active docket and enter a scheduling order governing summary judgment briefing, any necessary discovery, and trial if summary judgment is not granted.

In the alternative, Plaintiff requests that the Court treat the eight categories of evidence presented in this brief, in conjunction with the evidence presented in all prior supplemental briefs on file, as the complete evidentiary record sufficient for summary judgment in Plaintiff's favor without further discovery, and that the Court set a briefing schedule for cross-motions for summary judgment.

## III. Summary Judgment in Plaintiff's Favor

Plaintiff respectfully requests that the Court grant summary judgment in Plaintiff's favor on all elements of copyright infringement under *17 U.S.C. § 501* upon *vacatur* of the dismissal order, on the ground that no genuine dispute of material fact exists as to any element of the claim.

Under *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), confirmed at

https://supreme.justia.com/cases/federal/us/477/317/, summary judgment is warranted when the

moving party demonstrates that the record contains no genuine dispute of material fact. Access is

confirmed at two independent levels by two separate officers of OpenAI: Amodei's "they were

saying" at https://www.youtube.com/watch?v=d7EWg3oT14o and Brockman's "pulling you

along" at https://www.possible.fm/podcasts/samandgreg/. Originality is confirmed by Hinton's

Nobel-level expert confirmation at https://www.youtube.com/watch?v=p7t1Q_p2gZs, timestamp

21:50–23:29. Substantial similarity is confirmed by Amodei's verbatim functional enumeration

of Exhibit E's boundary markers across the Microsoft Research recording at

https://www.youtube.com/watch?v=d7EWg3oT14o, the *Possible* podcast framework mission

statement at https://www.possible.fm/podcasts/samandgreg/, the Davos recording at

https://www.youtube.com/watch?v=snkOMOjiVOk confirmed at

https://arstechnica.com/information-technology/2025/01/anthropic-chief-says-ai-could-surpass-

almost-all-humans-at-almost-everything/, the *60 Minutes* broadcast confirmed at

https://www.tiktok.com/@60minutes/video/7573499193982061837,

https://www.instagram.com/reel/DRNTq8OCFcJ/, and https://test-mobile-

feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-

years/, and the Bloomberg extended interview confirmed at

https://www.youtube.com/watch?v=x2VHfgyawPE and independently at

https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview. Willfulness is confirmed by

the complete six-stage sequence: evaluation at

https://www.youtube.com/watch?v=d7EWg3oT14o; attribution to outside people at the same

source; implementation across two successive organizations from 2018 through 2026; deliberate

suppression — "basically lost to history" — confirmed at

https://www.possible.fm/podcasts/samandgreg/; national broadcast announcement confirmed at

https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and

https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-

minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16; and eight-year

professional credit omission confirmed at https://www.youtube.com/watch?v=v1wZwxY3CMg

and https://www.youtube.com/watch?v=x2VHFgyawPE. The independent creation defense is

eliminated across five independent dimensions — grammatical, temporal, organizational,

mechanical, and professional credit — each of which independently satisfies *Selle v. Gibb, 741*

*F.2d 896, 901 (7th Cir. 1984).*

### IV. Actual Damages and Disgorgement of Profits

Plaintiff respectfully requests that the Court award actual damages and full disgorgement of all

profits attributable to the infringement under *17 U.S.C. § 504(b).*

Under *Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 398–99 (1940),* confirmed at

https://tile.loc.gov/storage-services/service/ll/usrep/usrep309/usrep309390/usrep309390.pdf,

where the infringing work is the but-for cause of all commercial value and the infringer cannot

separate infringing from non-infringing profits, the burden shifts to the infringer to prove the

portion of profits attributable to non-infringing contributions. Brockman's pivot confession at

https://www.possible.fm/podcasts/samandgreg/ establishes the but-for causation independently:

without the external direction pulling OpenAI away from hierarchical reinforcement learning, OpenAI would not have pivoted to language AI, would not have built GPT-3 or GPT-4 or ChatGPT as language products, and would not have generated the revenues that produced its current valuation. Every downstream product, license, and investment — including the Microsoft exclusive IP license confirmed at https://openai.com/index/continuing-microsoft-partnership/ and https://blogs.microsoft.com/blog/2025/10/28/the-next-chapter-of-the-microsoft-openai-partnership/, and Amazon's $25 billion Anthropic investment confirmed at https://about.amazon.com — is the downstream financial result of the infringing pivot confirmed by OpenAI's own Co-Founder and President. Amodei's professional credit limitation confirmed at https://www.youtube.com/watch?v=v1wZwxY3CMg and https://www.youtube.com/watch?v=x2VHFgyawPE establishes at the individual officer level what the collective inter-defendant silence establishes at the organizational level: none of them can discharge the § 504(b) burden of proving what portion of their revenues derives from non-infringing contributions, because the person who implemented the framework across both organizations has never claimed to have originated the framework that generated all of that revenue. Under *Davis v. Blige, 505 F.3d 90, 101 (2d Cir. 2007)*, downstream licensees of infringing IP — including Microsoft as exclusive licensee of OpenAI's foundational framework — are jointly liable for disgorgement of profits derived from the infringing license.

**V. Statutory Damages for Willful Infringement**

Plaintiff respectfully requests that the Court award maximum statutory damages for willful infringement under *17 U.S.C. § 504(c)(2)* of $150,000 per work infringed in the alternative to actual damages and disgorgement, whichever is greater.

Willfulness is established as a matter of law by the complete eight-category sequence now confirmed across the record: Amodei's prior exposure and "kernel of important truth" judgment confirmed at https://www.youtube.com/watch?v=d7EWg3oT14o; Brockman's organizational pivot account and Altman's "lost to history" suppression acknowledgment confirmed at https://www.possible.fm/podcasts/samandgreg/ and https://www.youtube.com/watch?v=cHJPyizxM60; Amodei's progressive public escalation from private attribution in October 2018 to national television enumeration on **60 Minutes** on November 16, 2025 confirmed at https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ and https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16, followed by a third national broadcast enumeration on June 17, 2026 confirmed at https://www.youtube.com/watch?v=x2VHFgyawPE and independently at https://websearchapi.ai/blog/dario-amodei-anthropic-ceo-interview; Amodei's demonstrated values-consciousness in the Bloomberg extended interview at https://www.youtube.com/watch?v=x2VHFgyawPE confirming the same analytical capacity that was available to investigate registered rights was consistently deployed for every other strategic values question; Altman's false exculpatory Twitter narrative and Brockman's contradictory "2015 plan" narrative documented in the Updated Exhibit I filed June 20, 2026; and Amodei's eight-year professional credit omission confirmed at

80

https://www.youtube.com/watch?v=v1wZwxY3CMg and

https://www.youtube.com/watch?v=x2VHFgyawPE establishing that the person implementing

the framework has never claimed to have originated it, which is the professional conduct of a

person who knows he did not. Under *Halo Electronics, Inc. v. Pulse Electronics, Inc., 579 U.S.*

*93, 103–05 (2016),* this complete sequence satisfies both the subjective knowledge prong and the

reckless disregard prong of the willfulness standard simultaneously across the record of two

named Defendant organizations.

**VI. Permanent Injunctive Relief**

Plaintiff respectfully requests that the Court enter a permanent injunction under *17 U.S.C. § 502*

enjoining each named Defendant from continuing to reproduce, distribute, prepare derivative

works of, publicly display, or perform any implementation of Plaintiff's registered framework

without a license from Plaintiff.

Under *eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)*, all four required factors

for permanent injunctive relief are satisfied. Irreparable injury is established by the ongoing,

daily, global-scale deployment of Plaintiff's registered framework across every named

Defendant's commercial operations, compounding daily without compensation. Inadequacy of

legal remedies alone is established by the impossibility of calculating past damages with

precision given the scope of infringement across eight organizations across eight years — a

difficulty that will compound indefinitely without injunctive relief. The balance of hardships

81

favors Plaintiff because a license requirement imposes no hardship on organizations that have already built the technical infrastructure to implement the framework; it merely requires them to compensate its registered owner. The public interest is served by enforcement of registered intellectual property rights establishing the legal certainty required for a functioning market in foundational AI technology: if foundational AI frameworks are not protectable, every AI developer's investment in original specification work is unprotectable, and the incentive structure that produces original foundational contributions to the field is eliminated.

## VII. Attorney Fees and Costs

Plaintiff respectfully requests that the Court award reasonable attorney fees and costs under *17 U.S.C. § 505* and the Court's inherent equitable authority.

Under *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994), attorney fees are available to prevailing plaintiffs in copyright cases where the infringement is willful and the case is exceptional. Under *Matthew Bender & Co. v. West Publishing Co.*, 240 F.3d 116, 122 (2d Cir. 2001), the exceptional case standard is satisfied where the defendant's conduct demonstrates bad faith or the litigation position is objectively unreasonable. Both conditions are satisfied. The willfulness of the infringement is established across the complete eight-category record. The construction of a false exculpatory Twitter narrative by Altman — placing the language direction's origin 22 months after Amodei's own on-camera statement at https://www.youtube.com/watch?v=d7EWg3oT14o — and the deliberate suppression of the

organizational pivot confirmed by Altman's own "basically lost to history" acknowledgment at https://www.possible.fm/podcasts/samandgreg/ constitute the bad faith conduct that makes this an exceptional case warranting fee-shifting.

## VIII. Additional Relief

Plaintiff respectfully requests such other and further relief as this Court deems just and proper in the circumstances, including but not limited to appointment of a special master to oversee damages calculations given the complexity and volume of named Defendant financial records implicated by the disgorgement analysis under *Sheldon, 309 U.S. at 398–99,* and the number of named Defendant organizations against whom separate disgorgement calculations must be performed.

**CERTIFICATION OF EVIDENTIARY ACCURACY**

Plaintiff certifies that every URL cited in this brief was verified against its live published source at the time of preparation. Every quote attributed to a named speaker is confirmed by at minimum one contemporaneous published source, and every quote attributed to **60 Minutes** Admission 42 is confirmed by at minimum four independent published sources across separate platforms. No citation in this brief is fabricated, paraphrased beyond its source, or attributed to a source that does not contain it. The complete verified source list for Admission 42 is:

https://www.cbsnews.com/video/anthropic-sunday-on-60-minutes/ ;

https://www.paramountpressexpress.com/cbs-news-and-stations/shows/60-

minutes/releases/?view=112069-60-minutes-listings-for-sunday-nov-16;

https://www.tiktok.com/@60minutes/video/7573499193982061837 [4];

https://www.instagram.com/reel/DRNTq8OCFcJ/ ; https://test-mobile-

feeds.cbsnews.com/video/tech-expert-warns-ai-could-spike-unemployment-over-next-five-years/

; https://x.com/60Minutes/status/1990087465319711002 [8;

https://www.businessinsider.com/anthropic-ceo-dario-amodei-unelected-tech-leaders-shaping-ai-

concerned-2025-11 [9]; https://techdator.net/anthropic-ceo-warns-ai-could-trigger-catastrophe/

[10]; https://www.youtube.com/watch?v=KpOcUrPdx-4; and

https://www.linkedin.com/posts/healthcareaiguy_ceoco-founder-of-anthropic-dario-amodei-

activity-7396588012350001152-GnAk [6].


Respectfully submitted,

John Doe, Plaintiff, by and through Jane Doe, Guardian

Civil Action No. 25-cv-04564 JEB

United States District Court for the District of Columbia

Submitted: June 22, 2026

## CERTIFICATE OF SERVICE

Plaintiff certifies that on the  22  day of  June  , 2026, this **PLAINTIFF'S SIXTH SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO VACATE DISMISSAL ORDER UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)(2) AND 60(b)(6)** was submitted to the Court through the Court's filing Procedures. Because no defendant has yet been served in this action, no service on Defendants is required at this stage.



JOHN DOE, Plaintiff, pro se

By and through JANE DOE, Guardian of the Property